## Hoatz *against* Patterson.

One who by special contract undertakes to furnish all the materials and erect a house or other building for a certain sum, cannot recover a balance due to him upon the completion of the work by filing his claim therefor under the provisions of the mechanic's lien law.

ERROR to the Common Pleas of *Columbia* county.

Daniel Hoatz against Burd Patterson, reputed owner, and Thomas Dunlap, claiming to be owner. *Scire facias* sur mechanic's lien. Daniel Hoatz and Burd Patterson entered into an agreement, which was reduced to writing, by which the former contracted to furnish all the materials and build a furnace, casting-house, stables and houses necessarily appurtenant thereto, for Patterson, who contracted to pay therefor the sum of $6000. Upon the completion of the work, Hoatz filed a claim for a balance

v. — 68

[Hoatz v. Patterson.]

of $1325, which he claimed to be due, under the provisions of the mechanic's lien law, and issued this *scire facias* thereupon. The only question in the case was, whether it could be maintained. Donnell, President, was of opinion, that the claim was not the subject of a mechanic's lien, and therefore directed a verdict and judgment for the defendants.

*Bellas* and *Frick,* for plaintiff in error, cited *Serg. Mec. Lien Law* 32; 2 *Rawle* 343; 3 *Rawle* 492.

*Comly,* contra, contended that the case of *Jones* v. *Shawhan,* (4 *Watts & Serg.* 257), was conclusive of the question.

The opinion of the Court was delivered by

Rogers, J.—It is useless to discuss all the points raised in the argument, as there is one point which is decisive against the lien. Hoatz, the claimant, made a special agreement with the defendant, Patterson, to erect certain buildings, particularly specifying them, for the gross sum of $5975, which amount was afterwards increased by another agreement to $6000. The contract was reduced to writing, and although not signed, yet there is no dispute that there was a contract, nor is there any difference as to its terms. This agreement is recognised by the claimant, as the lien is filed to secure the money remaining unpaid on the contract. The point is not new, for it has been already virtually decided in *Jones* v. *Shawhan,* (4 *Watts & Serg.* 257). One who furnishes nothing but his superintendence and skill as an undertaker, has no right, as is there held, to file a lien for anything in pursuance of his contract, as such. Although the observations of the Chief Justice seem to be restricted to a superintendent merely, yet the case really was in every essential feature, identical with this. The contractor agreed to furnish all the materials and erect the buildings for a fixed price, and it is to such a state of things that the remarks were intended to apply. The remark, that he who found the labour or materials, and not he who ordered it, is entitled to the lien, applies in all its force here. It is not intended to deny, that where there is a special contract, a person who furnishes materials or finds labour, may have a lien against the buildings notwithstanding; but, can the same individual stand in the double character of contractor and material man? We see no good reason that he should. If he is entitled to file a lien, it must be when the contract is made; for it is very plain, that nothing that he can do afterwards, can alter his position, nor can he, under the pretext that he furnished the materials as well as superintended the work, burthen the property with a double lien. What is it to the owner in what way he procures the materials or finds the labour, whether it be by purchase, or out of his own stores, whether by his own labour, or the labour of others whom he hires for that purpose?

[Hoatz v. Patterson.]

The owner has a right to take it for granted, when there is no stipulation to the contrary, that the contractor is satisfied with the security for the faithful performance of the contract; for when the bargain is made, or before he commences the work, is the proper time to exact real or personal security, if he requires it, or to depend, as he may in many cases, with confidence on the known ability and integrity of the owner. As this case does not, as we apprehend, come within the mischief, we are unwilling to extend its operation by construction; for, without being additionally burthened, already are owners desirous of improving their estates exposed to great risks, which can only be avoided, if at all, by extreme care and great caution.

The argument of the plaintiff's counsel, also adds strength to this view of the law, as he has clearly shown the difficulty of setting down the exact time when each item is furnished for the work or labour performed, a condition expressly enjoined by the Act, and held essential in several cases. In the case in hand, there is no colour for the suggestion, (even if that would alter the law), that the contractor was engaged in the business of supplying materials, or that the work was performed by his own hands. The materials were obtained by purchase as they were needed, or in the way provided in the agreement. He hired master-workmen, as the master-mason, for instance, to perform the labour, he being responsible for the whole, and they acting under his superintendence and direction. This is mentioned as an ingredient in the case, although, as before observed, it would make no difference in principle, even if he had, in whole or in part, furnished the materials from his own stores. There would, in either case, be the same inconvenience arising from double liens and double recoveries, and the same incongruity in the same person being both plaintiff and defendant. It would present a curious spectacle of legal incongruity, if the master-mason, for example, should file his lien against the owner and the *contractor*, and the *contractor* should also file his lien against the owner, for the same claim. But this is the effect of the position contended for. It is impossible, however, to believe, that the Legislature ever contemplated such a legal absurdity.

Judgment affirmed.