## FREELAND and others *vs.* McCULLOUGH.

A suit against a stockholder of a corporation, to charge him individually with its debts, pursuant to a provision in the act of incorporation, is an action *upon a statute, "the benefit and suit whereof is limited to the party aggrieved,"* and is barred by the statute of limitations unless prosecuted within *three* years after the cause of action accrued.

The endorsee of negotiable paper given to the payee for a simple contract debt, by a corporation whose stockholders are by its charter personally liable for its debts contracted while they were such stockholders, can maintain an action upon the statute in his own name for the debt against one who was a stockholder when it was contracted.

In such action, where the note or bill was given at a period subsequent to that at which the debt was contracted, it is unnecessary for the declaration to show that the defendant was a stockholder when the paper was given.

A subsequent count in a declaration may, by a distinct reference to a preceding one, adopt an averment contained in such preceding count without a repetition of such averment.

Where the liability of the stockholders for the debts of a corporation attaches upon the return of an execution against the corporation unsatisfied, *or* upon the dissolution of the corporation, and *both* of these facts were averred in one count of a declaration in an action to enforce such liability ; *held,* that although only one of such facts was necessary to sustain the action, the count was good in form, and that the other averment might be rejected as surplusage.

Where a demurrer is interposed to several counts of a declaration, and any one of them is good, the plaintiff is entitled to judgment.

DEMURRERS. The declaration is in debt upon the act incorporating the Rossie Galena Company, passed May 12, 1837, (*Laws of* 1837, *p.* 445,) and contains six counts. The first count sets forth the passage of the act, and the provisions of the 9th section declaring that the stockholders of the corporation shall be jointly and severally personally liable for the payment of all debts and demands contracted by the corporation or their authorized agents; and that any person having any demand against such corporation, may sue any stockholder or director in any court having cognizance thereof, and recover the same with costs; and also the provisions of the 10th section declaring that before any such suit shall be commenced judgment shall have been obtained against the corporation, and exe-

cution issued thereon and returned unsatisfied, or that the corporation shall have been dissolved. It then proceeds to state that afterwards, to wit, on, &c. at, &c. the corporation, by its authorized agent, drew its bill of exchange dated on that day, upon one B. R., at three months, for $546,53, payable to the order of E. C., the endorsement of the bill by E. C. to the plaintiffs, the acceptance of the bill by the drawee, the presentment for payment and non-payment thereof. It then avers the liability of the company, and a promise by them to pay the bill, in consideration of such liability. It also sets forth the making, endorsement, acceptance, demand and non-payment of a similar bill for $304,75 ; and then proceeds to state the prosecution of a suit by the plaintiffs against the Rossie Galena Company upon these several bills, and the recovery of judgment thereon in this court at the January term, 1840 ; the issuing of an execution upon such judgment to the sheriff of the county of St. Lawrence, and the return thereof unsatisfied. It then avers that at the time of the contracting of the debts for which these bills of exchange were respectively given by the Rossie Galena Company, the defendant was one of the stockholders of said company, and remained such stockholder until the time of the commencement of this suit : and that the debts remain wholly unpaid, by means whereof an action hath accrued, &c. The second count is like the first, except that it was upon one of the drafts mentioned in the first count. The third count states that after the passage of the act, to wit, on, &c. at, &c. the company were indebted to one S. Barker in a large sum, to wit, $304,75, for goods, &c. before that time sold by Barker to the company ; and for money lent, &c. and work and labor, &c. stating the substance of the usual *indebitatus* counts as between Barker and the company, including a promise of payment to Barker by the company. The count proceeds to aver that afterwards, on, &c. at, &c. Barker, for a valuable consideration, and with the assent of the company, assigned and transferred the debts, claims and demands in this count mentioned to the plaintiffs, and gave notice of such transfer to the company, and requested them to pay the debts to the plaintiffs, and that thereupon the company,

in consideration of the premises, promised to pay the same to the plaintiffs; that afterwards, on, &c. at, &c. the plaintiffs demanded payment of the company, which they neglected to make; that the plaintiffs thereupon prosecuted the company in this court, and obtained judgment at the January term, 1840, for $971,74, for the non-payment (among other things) of the debts, claims and demands in this count mentioned, and for costs; and that the sum of $304,75, parcel of such judgment, was for the debts, claims and demands of Barker assigned to the plaintiffs, as in this count mentioned. Then follows a statement of the issuing of execution upon this judgment, and of the return thereof unsatisfied. The plaintiffs then aver that the defendant, at the time of the contracting of the debts mentioned in this count by the company to Barker, was one of the stockholders of the company, by means whereof an action hath accrued, &c. The fourth count sets forth that after the passage of the act, to wit, on, &c. at, &c. "the said The Rossie Galena Company were justly indebted to the said Sylvanus Barker herein before mentioned, in certain other large sums of money, to wit, to the *same respective amounts, and for the same respective considerations in the last preceding count of this declaration set forth,"* and that being so indebted, they promised Barker to pay the same to him in like manner as is set forth in the last count; and that afterwards, to wit, on the fourth day of May, 1839, at, &c. the company, by its duly authorized agent, made and delivered to Barker " as a written evidence and means of payment of the debt and claim of the said Barker against the said The Rossie Galena Company," but not in payment thereof, their certain draft or bill of exchange dated on the last mentioned day for $304,75, at three months from date, payable to the order of Barker, and addressed to B. Ransom. The count then sets forth the endorsement and delivery of this bill by Barker to the plaintiffs for a valuable consideration, the acceptance of the bill by Ransom, the presentment thereof when due for payment, its nonpayment and notice thereof to the company; that the company thereupon became liable to pay the amount of the bill to the plaintiffs, and a promise by the company to pay the same to the

plaintiffs; the default of the company to make the payment; the commencement of a suit in this court by the plaintiffs against the company upon this bill, and for other demands; the recovery of a judgment at the January term, 1840, for the amount of this bill and the other demands with costs, the whole being $971,74; the issuing of execution, and the return thereof unsatisfied. The plaintiffs then aver that the defendant, at the time of the contracting of the debts and claims for which the last mentioned bill of exchange was given, was one of the stockholders of the company, and that the judgment remains wholly unpaid, by means whereof an action hath accrued, &c. claiming $304,75. The fifth count is like the last, with the additional averment that after the transactions mentioned in this count, to wit, on the 26th day of August, 1843, to wit, at, &c. "the said The Rossie Galena Company became and were dissolved." The last count omits the formal statement of the contracting of the debt to Barker, but sets forth the making of a bill of exchange in all respects like the one mentioned in the two preceding counts, and contains the other averments respecting the endorsement, acceptance, presentment, non-payment, and notice to the company; after which follows an averment, "that the said last mentioned bill of exchange was given by the said The Rossie Galena Company to the said Sylvanus Barker for a debt previously contracted by them, to wit, on, &c. at, &c. which debt has been and remains wholly unpaid and unsatisfied; and that the defendant, *at the* time of the contracting of the debt, was one of the stockholders of the company." It is likewise averred in this count that The Rossie Galena Company was dissolved on the 6th day of August, 1843.

To the first three counts the defendant pleaded *nil debet*, and a special plea of the statute of limitations in this form: " that this suit hath not been commenced against him the said defendant within *three years* next after the cause of action in the said first, second and third counts in the declaration above mentioned did accrue," concluding with a verification.

To the fourth, fifth and sixth counts, the defendant interposed a demurrer, and the plaintiffs joined.

The plaintiffs demurred to the plea of the statute of limitations, pleaded to the first three counts, and the defendant joined in demurrer.

*J. C. Smith & H. S. Dodge*, for the defendant.	1. The statute (2 *R. S.* 298, § 31) applies to this case, and bars the plaintiffs.	The action is brought directly upon the statute incorporating The Rossie Galena Company. (*Laws* 1837, *p.* 446, §§ 9, 10.)	If the thirty-first section does not apply, there is no limitation whatever to actions of this kind.	But this is strictly a statute liability.	Independently of the statute, no action whatever would lie against the defendant.	In *Jones* v. *Pope*, (1 *Saund.* 37,) it was held that the statute of limitations of the 21 *James* 1, *ch.* 16, of which our statute providing for the six years limitation is a transcript, did not apply, because the action being debt for an escape was founded upon statute law, and so was out of that statute of limitations.	An action on the case for this escape lay at common law; but the statute afforded a new remedy.	In *Pease* v. *Howard*, (14 *John. R.* 479,) it was held that the statute of limitations did not apply to a suit on a judgment in a justice's court.	The legislature, in the revised statutes, attempted to provide for all the cases omitted.	The remedy given by the statute under consideration is quite different from any which the common law would have given if this had been an unincorporated association.	Here a suit is authorized against a single stockholder.	At common law if one member of an association had been prosecuted alone, he could have pleaded in abatement the non-joinder of the others.	The provision in 2 *R. S.* 300, § 44, shows the sense of the legislature, that actions of this description are barred by the provisions limiting the time of commencing actions for penalties and forfeitures; for it declares that none of those provisions shall apply to suits against directors or stockholders of any monied corporation to recover any penalty or forfeiture imposed *or to enforce any liability* created by certain provisions of the revised statutes therein referred to, and it directs that such suits may be brought within six years after the discovery of the facts.	In *Bullard* v.

*Bell*, (1 *Mason's C. C. Rep.* 243,) an action upon a statute of the state of New-Hampshire, very similar in its provisions to the one under consideration, was held not to be barred by the New-Hampshire statute of limitations, which is likewise a transcript of the English statute of *James I.*, on the ground that the action was brought to enforce a *statute* liability. The counsel also referred to *Van Hook* v. *Whitlock*, (2 *Edw. Ch. R.* 304; 7 *Paige*, 373, *S. C., and* 26 *Wend.* 43, *S. C.*) In the last mentioned case, though Nelson, Ch. J. was of opinion that this thirty-first section had no application to an action upon this statute, the decision turned upon another point.

2. The demurrer to the fourth, fifth and sixth counts is well taken. These counts do not show any title in the plaintiffs to recover in their own names for goods sold to The Rossie Galena Company by Sylvanus Barker. The endorsement of the draft of The Rossie Galena Company upon B. Ransom was not an assignment of the debt for which the draft was given, so as to enable the plaintiffs, as assignees of the debt, to recover against the company, or against the defendant in this cause for goods sold and delivered. The plaintiffs have no cause of action except upon the draft, and upon that, only against the parties to it; and the defendant is no party to the draft. At all events, no action can be maintained upon this demand for goods sold without an express promise by the company to the plaintiffs, and no such promise is averred in these counts. (*Jessell* v. *The Williamsburgh Insurance Co.* 3 *Hill*, 88; *Dubois* v. *Doubleday*, 9 *Wend.* 317.) The fourth and fifth counts do not set out the indebtedness of the company to Barker, otherwise than by reference to preceding counts. This is not sufficient. (*Currie* v. *Henry*, 2 *John. R.* 433.) The two last counts ought to contain an averment that the defendant was a stockholder of the company at the time of the drawing of the bills. One of the counts contains averments that the company was dissolved; *and also*, that an execution on the judgment against the company had been returned unsatisfied. These averments are repugnant. One of these facts alone would have been sufficient to warrant a suit against a stockholder, and only one should have been averred.

*G. Bowman,* for the plaintiffs.   The plea of the statute of limitations is believed to have been interposed in consequence of what was said by the chancellor in *Van Hook* v. *Whitlock,* (7 *Paige,* 373.)   This was *obiter* merely, and the chancellor's expression only shews that he was *inclined* to that opinion ; and Nelson, Ch. J., when the case came before the court for the correction of errors, was very strongly against the defence.   It has never been determined that the provision of the statute of limitations under consideration applies to all actions which are *authorized* by any statute.   The statute was intended to apply the short limitation of three years to *penalties* and *forfeitures* and to demands in the nature of penalties only ; but the liability now sought to be enforced is not of the character of a penalty or forfeiture.   It is a debt not created by the statute, but actually due from the defendant and the other members of the corporation ; and the statute merely provides that the associates shall not be wholly exempt from personal liability, and regulates the form of the remedy against them as individuals.   The debt is really created by the contract in which it originated.   The caption of the article of the revised statutes containing this section, shews the sense of the legislature to restrict it to penalties and forfeitures.   It is " Of the time of commencing actions for *penalties* and *forfeitures.*" (2 *R. S.* 297, *art.* 3.)   The term " party aggrieved" is inapplicable to one who is merely a creditor claiming a debt.   The liability in question is one to which the six years limitation provided by 2 *R. S.* 295, § 18, applies. That section embraces all actions of debt founded upon any contract, obligation or *liability ;* and the chancellor, in *Van Hook* v. *Whitlock,* (3 *Paige,* 410,) held that it applied to the liabilities of the stockholders of a corporation for its debts under the act of incorporation.

Then as to the demurrer to the last three counts.   This is not like a case between individuals, where one purchases goods and gives negotiable paper, which the seller transfers to another.   There it may be admitted that the holder cannot recover for goods sold.   In this case there is a debt due from the company, and that debt is due and payable to the plaintiff as

*the holder of the bill*, and not to the original creditor. For the payment of this debt any person who was a stockholder when it was contracted is liable. These propositions are undeniable. To whom then are the stockholders liable, to the plaintiffs to whom the debt is due or to the original creditors, to whom it is not due? In *Moss* v. *Oakley*, (2 *Hill*, 265,) the suit was brought by a party who was not the original creditor, and who made title to the debt only by means of the endorsement to him of a promissory note, and the declaration framed on such a case was held good. The objection that a debt not secured by commercial paper cannot be prosecuted in the name of one to whom it has been transferred, is a formal one and should not be extended. The liabilities of the stockholders are in the nature of collateral security for the debt, and it is well settled that where a creditor possesses a collateral security and transfers the debt, the assignee is entitled to the benefit of the security. (*Bank of Auburn* v. *Throop*, 18 *John. R.* 505.) It is sufficient to aver that the defendant was a stockholder when the debt was contracted. (*Moss* v. *Oakley, before cited, and Judson* v. *The Rossie Galena Co.*, 9 *Paige*, 598.)

*By the Court*, JEWETT, J. By the ninth section of the statute, by which the "Rossie Galena Company" was incorporated, (*Laws of* 1837, *p.* 445,) it is enacted that "the stockholders of said corporation shall be jointly and severally personally liable for the payment of all debts or demands contracted by the said corporation or their authorized agent or agents, and any person having any demand against the said corporation may sue any stockholder, director or directors, in any court having cognizance thereof, and recover the same with costs."

The defendant to the first, second and third counts in the declaration, has pleaded in bar that the suit was not commenced against him within three years next after the cause of action in those counts mentioned accrued. To this the plaintiff has put in a general demurrer, to which there is a joinder. The question then is, whether the plea be a good bar to the action set forth in these counts, as there is no question raised as to their

soundness. It is insisted, on the part of the defendant, that his liability is purely one created by, and that the action is brought directly upon the statute, and is therefore barred unless brought within three years next after the cause of action accrued. The provisions of the statute supposed to sustain the plea are contained in 2 *R. S.* 298, § 31, and are in these words : "An action upon any statute made, or to be made, for any forfeiture or cause, the benefit and suit whereof is limited to the party aggrieved, or to such party and the people of this state, shall be commenced within three years after the offence committed, or the cause of action accrued, and not after." This section prescribes the same limitation to actions, upon any statute, by the party aggrieved, which was provided by the sixth section of the act for the limitation of actions of April, 1801, (1 *R. L.* 186,) and provides a like limitation of three years as a bar to an action upon any statute, for any forfeiture or cause, the benefit and suit whereof is limited to the party aggrieved *and* the people of this state. This last provision is *new*, being first enacted in the revised statutes. Before their enactment it was held that there was no statute of limitation to an action upon a statute giving what was called a *qui tam* action for a penalty. ( *Wilcox, qui tam, &c.* v. *Fitch*, 20 *John.* 472.) Independently of the provisions of the ninth section of the act incorporating the " Rossie Galena Company," a creditor of such company could have had no legal or equitable cause of action against any stockholder, individually, for a debt owing by the company.

This provision then comes within the legal definition of a *remedial* statute. (1 *Black. Com.* 87.) Blackstone defines such statutes to be those which are " made to supply such defects, and abridge such superfluities in the common law, as arise either from the general imperfection of all human laws, from change of time and circumstances, from the mistakes and unadvised determinations of unlearned (or even learned) judges, or from any other cause whatsoever." It has a further signification, viz. " a statute giving a party a mode of remedy for a wrong when he had none or a different one before." In giving a construction to this class of statutes, three points are to be considered ; " the

old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was for which the common law did not provide; and what remedy the legislature hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy." (1 *Black. Com.* 87.) By the common law, the property and effects of the corporation only would be liable for the payment of its debts. The mischief was that individuals, through the medium of a corporation, might engage in any enterprise, and yet incur no responsibility to those with whom, in the name of the corporation, they might contract, or to whom they might become indebted, beyond the funds or effects advanced as capital to such corporation; and in the event that such enterprise or business proved successful, they could enjoy the profits of it to the full limit of the gains; but if it proved adverse, however recklessly it had been conducted, the loss fell upon those who had confidingly given credit to it. No remedy remained to the creditors beyond sharing in the wasted remnant of effects which the legal being might have on hand. In effect, the law organized a partnership of individuals in the shape of a corporation, who could, without limitation, enjoy the profits of the business engaged in without incurring the hazard of any loss beyond the funds contributed as capital. To remedy this mischief the legislature, in the creation of this company, deemed it fit and proper to provide that the stockholders should be jointly and severally personally liable for the payment of all debts or demands contracted by it while they were stockholders; and accordingly declared that any person having a demand against such corporation might sue any stockholder, and recover the same with costs, after judgment and an execution returned unsatisfied against the corporation, or after the corporation had been dissolved. The question then recurs, Is this action founded upon any statute for any cause, the benefit and suit whereof is limited to the party aggrieved? Nothing can be clearer to my mind, than that it is. Without the provision of the statute, there is no legal liability, no cause of action against the defendant, assuming him to have been a stockholder at the

time the debt was contracted.   If I am not mistaken in this con-
struction, it follows as a consequence, that such action is barred
after three years, by the express enactment of the legislature
above referred to. (*Van Hook, adm'r, &c.* v. *Whitlock and
others,* 2 *Edw. Ch. R.* 304; 7 *Paige,* 373, *S. C.*) I am aware that
in that case, when on appeal from chancery, in the court for the
correction of errors, (26 *Wend.* 43,) the late Ch. Justice Nelson
expressed an unqualified dissent from the construction given the
statute under consideration; but I am persuaded that the learn-
ed chief justice was led to the observations which he made in
regard to it, by seeing or supposing he saw, in that construction,
evils that could not be endured.   If such apprehensions were
well founded, in my judgment the remedy is not with the court,
whose duty, I need not in this place suggest, is to *declare*, not
to *make* law.   It is proper, perhaps, for me to say, that this ques-
tion was not directly in issue or material to the decision of the
case of *Van Hook* v. *Whitlock.*   I have referred to the opinions
given upon the construction of the clause of the statute in ques-
tion, as expressed by eminent judges and entitled to high con-
sideration, although perhaps, strictly, they may be regarded as
*obiter.*   I am of opinion that the plea setting up the statute of
limitations to the first three counts is well pleaded, and that the
defendant is entitled to judgment on the demurrer to that plea.

The defendant has demurred to the fourth, fifth and sixth
counts of the declaration, on the ground that they do not show
any title in the plaintiffs to recover in their names against the
defendant for goods sold to " The Rossie Galena Company" by
Barker.   That is not necessary in this action.   All that is re-
quisite here is, that the declaration should set forth a good
legal demand due to the plaintiffs from " The Rossie Galena
Company," that the defendant was a stockholder in the compa-
ny at the time of the contracting of the debt constituting the
demand, and that before the commencement of the suit the
plaintiffs had recovered judgment against the company and
issued execution thereon and which had been returned unsatis-
fied, or that the corporation had been dissolved.   These aver-
ments being made and proved on the trial, the provisions of the

ninth section of the act cast a legal liability upon the defendant for the payment of the demand. The debt must be due to the plaintiff from the company, not from the defendant. (*Moss* v *Oakley*, 2 *Hill*, 265; *Moss* v. *M'Cullough*, 5 *id.* 131.)

Assuming, as the defendant's counsel insists, that the endorse-ment to the plaintiffs of the draft drawn by the corporation on Ransom, payable to the order of Barker, for the debt due to him from the corporation, did not at law transfer the debt for which the draft was given so as to enable the plaintiffs as assignees to recover in their own names against the company for goods sold, nevertheless if the draft was made upon the consideration of goods previously sold, and was transferred for value, and was a valid demand against the company, (it being negotiable in terms,) I am unable to discover any objection to the plaintiffs being deemed creditors of the company for such debt upon such draft, or any reason why the company must not be considered as hav-ing contracted a demand which the plaintiffs show a legal right to recover. The plaintiffs, as holders of the draft, certainly have a demand against the company, and the statute does not limit the liability of the stockholder to the party who was the creditor when the demand was originally contracted. The provision extends to all and every person who subsequently ac-quires title to such demand.

It is, however, objected that the fourth and fifth counts do not set forth the indebtedness of "The Rossie Galena Company" to Barker, nor the consideration of such indebtedness with suffi-cient certainty. In the third count, such indebtedness and con-sideration are particularly set forth as inducement to the promise of the company; and then these counts which immediately fol-low contain an averment that the company "were justly in-debted to the said Sylvanus Barker hereinbefore named in cer-tain other large sums of money, to wit, in the same respective amounts and for the same respective consideration in the last preceding count of this declaration set forth; and being so in-debted," &c. I am of opinion that this statement is sufficiently certain, and that such reference to a preceding count is admis-sible according to the rules of pleading. The counsel for the

defendant has made a point, that the counts now under exam-
ination should contain an averment that the defendant was a
stockholder of the company at the time when the drafts were
made. The averment actually made in these counts is, that
"at the time of the contracting of the debts and claims for
which the said last mentioned bill of exchange was given, to
wit, on, &c. at, &c. the said defendant was one of the stock-
holders of said company." I think the objection in this par-
ticular cannot be sustained. The debt for which the draft is
alleged in each of these counts to have been made, is averred,
though under a *videlicet*, to have been contracted on the 27th
day of April, 1839, and the draft is alleged to have been drawn
*afterwards*, on the 4th day of May in the same year. At the
time of drawing the draft the defendant may have ceased to be a
stockholder; yet, under a liberal and beneficial construction of the
provisions of the statute, (which courts are bound to extend to all
statutes remedial in their object,) I am of opinion that the averment
that the defendant was a stockholder at the time the debt was
contracted, for which the draft was made, is sufficient. The
debt arising upon the sale of the goods by Barker to the com-
pany was not paid or extinguished by the draft; and although
the plaintiffs could not in their own names at law recover against
the company upon the original consideration, for goods sold by
Barker, without an assignment of it and an express promise to
pay, by the company made to them, yet the draft was negotia-
ble, and upon that they could recover against the company :
and the debt or demand for the goods sold remained unpaid—
not discharged or cancelled until the draft should be paid. By
the construction given to the ninth section of the act incorpo-
rating the "Rossie Lead Mining Company," in *Moss* v. *Oak-
ley*, (2 *Hill*, 265,) the suit against stockholders must be brought
against those who were such *when the debt was contracted*.
This being the law, it seems to me that when we find that the
debt was contracted at a time anterior to the making of nego-
tiable paper given for such debt, the averment that the defen
dant was a stockholder at the former period is the only one
proper to be made in the case. The plaintiffs own and are en-

titled to recover the debt, not indeed as for goods sold, but upon the evidence of such debt in the shape of negotiable paper, and that the defendant was a stockholder when that debt was contracted. Suppose Barker had not transferred the draft, was still the owner, and had sued as the plaintiffs have, upon the draft merely, having no counts under which he could recover for goods sold, could there be any well founded objection to an averment that the company owed him on the 27th of April, 1839, for goods sold; and that the draft was made for that demand, not in payment or satisfaction until paid, so as to charge the defendant with a liability to pay, on the ground that he was a stockholder when the debt was contracted? I think not; and if not, it seems to me that the conclusion at which I have arrived, that the plaintiffs may aver and show that fact in order to establish the defendant's liability under the statute to them for that demand, is sound. It does not follow that the plaintiffs must be in a situation to recover against the company upon the evidence, which would be required to recover upon the original promise, express or implied, in order to charge the defendant. All that is requisite is, that they should set up a demand due to them, contracted by the company when the defendant was a stockholder, which they can recover against the company; that they have once recovered a judgment against the company, and had execution which has been returned unsatisfied. This they have averred; and if true, they are in my opinion entitled to recover their debt.

An objection is made to the last count, that the averment of a recovery of judgment and a return of an execution thereon unsatisfied in 1840, and that afterwards, in August, 1843, the company were dissolved, are inconsistent and repugnant to each other, and that this count is therefore bad. Mr. Chitty, (1 *Chit. Pl. 2d Am. ed.* 231,) says: "If, however, the matter unnecessarily stated, be wholly foreign and impertinent to the cause, so that no allegation whatever on the subject was necessary, it will be rejected as surplusage, and it need not be proved, nor will it vitiate, it being a maxim, that *utile per inutile non vitiatur;* except when, by this unnecessary allegation the plaintiff shows

that he has no cause of action;" and again, at page 232: "So though the superfluous allegation be *repugnant* to what was before alleged, it is void and will be rejected, and whatever is redundant and which need not have been put into the sentence, and contradicting what was before alleged, will not in general vitiate the pleading." The objection should have been, 1 think, for *duplicity,* rather than for *repugnancy.* The statute (§ 10) made it necessary for the plaintiffs to show before they commenced this suit, either that they had obtained judgment against the corporation upon their demand, and had had execution thereon, which had been returned unsatisfied in whole or in part, *or* that said corporation had been dissolved. The count avers both judgment and execution, *and* dissolution of the corporation, either of which would of itself, independent of the other, constitute a sufficient ground of action in that particular. The reason of the rule requiring a pleading to be single, is that it would be unnecessary and vexatious to put the opposite party to litigate and prove two points, when one would be sufficient to establish the matter in issue. (1 *Chit. Pl.* 230.) But however this may be, this demurrer is put in to three counts, and the rule is, if one is good the plaintiff must have judgment. Here two of them are held to be good. (*Mumford and another* v. *Fitzhugh and another,* 18 *John. R.* 457; *Brown* v. *Stebbins,* 4 *Hill,* 154; *Whitney* v. *Crosby,* 3 *Caines' R.* 89; *Gidney* v. *Blake,* 11 *John. R.* 54; *Martin* v. *Williams,* 13 *id.* 264; *Morell* v. *Colden, id.* 395.)

The defendant must have judgment on the demurrer to the plea of the statute of limitations to the first, second and third counts, and the plaintiff must have judgment on the demurrer to the fourth, fifth and sixth counts of the declaration. Each party has leave to amend on the usual terms.

· Judgment accordingly.