WEYMOUTH *v.* SANBORN.

A promissory note given for labor does not change the character of the claim, and it is still within the exception of section five of the Homestead Act.

The professional services of a physician do not constitute a claim for labor, within the meaning of that section.

A promissory note executed by the debtor and his wife, but without a mortgage by them of the homestead, is not excepted by the provision of that act from the exemption.

THIS is a writ of entry for premises set off to this plaintiff, upon an execution against the defendant for $95.96, being part of premises occupied by the defendant as a homestead, the whole being worth $450. The defendant and his wife claimed the same as a part of their homestead, and made due demand upon the officer to set it out to them, according to the statute, which he refused to do.

Said $95.96 was the amount of a note given the plaintiff by the defendant, for services as a physician. It was signed by the defendant and his wife.

The declaration had only common counts for money had and received, and labor done and performed.

It was agreed that such judgment should be rendered by the court as the foregoing facts should warrant.

*Shirley*, for the plaintiff.

*Rogers & Butterfield*, for the defendant.

BELLOWS, J. It appeared that the original debt was for services as a physician, and for that a note was given, signed by both husband and wife. Upon this note a suit was brought against the husband alone, and judgment obtained for the amount; and the execution has been extended upon the homestead, although a demand was duly made upon the officer to set it out according to the statute.

One question that arises is, whether the character of the claim is changed by the giving of the note ; that is, whether it is still to be regarded as a claim for labor within the fifth section of the Homestead Act or not. As a general principle, the court will look behind the form of the security, and ascertain the real nature of the debt, and decide according to that. Therefore, it is held that the taking up a note secured by a mortgage, by giving a new one for the same sum, is no discharge of the mortgage. *Elliott* v. *Sleeper*, 2 N. H. 525 ; *Bank* v. *Willard*, 10 N. H. 210 ; *Williams* v. *Little*, 12 N. H. 31. Nor will the giving of a note for the balance due an attorney on account, discharge his lien on the papers. *Dennett* v. *Cutts*, 11 N. H. 163. Neither will the giving of a note for the price of goods sold, discharge the vendor's lien. *Clark* v. *Draper*, 19 N. H. 419. So upon the same principle it has been held that the individual liability of a stockholder for the debt of a corporation is not discharged by the giving of the note of the corporation after such stockholder had ceased to be a member. *Freeland* v. *McCullough*, 1 Denio 414, 426. In these cases it is considered that the promissory note of the debtor, given for a precedent debt, is not a payment of it, but mere security ; that the debt is the substantial thing, and the note the evidence of it ; and we can see no reason why these principles should not be applied to the case before us. It partakes, indeed, very much of the character, in respect to the question under consideration, of liens, whether created by the act of the parties, as in the case of mortgages, or by operation of law, as liens of mechanics or attorneys ; and there is nothing in the nature of the case or the provisions of the law that requires a different rule. In Pennsylvania, this principle is applied to cases under the homestead exemption law. *Reed* v. *Defeborough*, 24 Penn. St. 495 ; *Weaver's Appeal*, 25 Penn, 434. In the latter case, the creditor held the promissory note of his debtor, given prior to July 4, 1849 ; and, after the passage of the Homestead Act, a new note was given for the old one, and a judgment rendered upon it ; and it was held that this change did not make the debt subject to the homestead exemption. And so is the case of *Reed* v. *Defeborough*, substantially.

The plaintiff's claim, then, is to be regarded as a claim for services as a physician, and the question is, whether it is excepted as a claim for labor. By section five of the Homestead Act, it is provided that the exemption shall not extend to "any claim for labor less than one hundred dollars," and this involves the inquiry as to the meaning of the term, "claim for labor." The purpose of the act was to protect from attachment and execution a comfortable family homestead, but of such moderate value as would not interfere with the just rights of creditors, excepting, however, from its operation, a class of creditors whose claims, in the judgment of the Legislature, ought not to be postponed for the object of providing a home, even of such moderate value; and among them are claims for labor less than $100. The common and ordinary signification of the term labor accords, we think, with the definition given by the best lexicographers, and is understood to be physical toil. And the term laborer is ordinarily employed to denote one who subsists by physical toil, in distinction from one who subsists by professional skill. The exception of claims for labor would not, therefore, ordinarily be understood to embrace the services of the clergyman, physician, lawyer, commission merchant, or salaried officer, agent, railroad and other contractors, but would be confined to claims arising out of services where physical toil was the main ingredient, although directed and made more valuable by mechanical skill. On the other hand, there is a technical use of the term in pleading, which has a much wider signification, and would embrace all sorts of services, whether physical or mental, or whether the main ingredient was manual toil or professional or other skill. It would embrace, indeed, all the classes we have mentioned, including the highest salaried officers, engineers, architects, sculptors, painters, stage players, master-builders or other contractors. And it becomes necessary to determine in which sense it was used in the law under consideration.

It will be observed that, in every form of useful labor, some degree of skill must enter; and so, in every application of skill, there must be some degree of physical labor. Unless, then, we adopt the most comprehensive signification, we must take it in its popular sense, as the only other that has been or can be suggested; and the question really is, which of the two was intended.

In determining this question, the object of the exception should be considered; and we think its purpose was to protect a class of creditors whose means of support for themselves and families would be likely to depend upon the punctual payment of their wages, thus making a claim more urgent than the claim of the debtor to exempt the family homestead, though small in value. This is shown both by the limitation on the value of the homestead, and in the amount of the claim excepted, as well as in the general object of the law; and we are constrained to think that the term labor was used in its primary and popular signification, restricted to claims arising from physical toil. Nor is there any thing in the fact that, in pleading, the term has a broader meaning, that requires a different construction from the one we are disposed to give it. The act does not

relate to courts, legal process, or pleading, or to any technical matter or subject, and there is nothing in it that indicates a technical use of the language.

We are at liberty, then, to gather the legislative intention from the policy of the law, the object sought to be obtained, as well as the ordinary meaning of the language used. The case of *Whitney* v. *Whitney*, 14 Mass. 88, is strongly in point. The question there was upon the construction of a statute which made all the real estate of a debtor liable for his debts. And it was held that, although the term real estate did not, strictly speaking, embrace remainders or reversions, yet, as it was the policy of the law to charge the whole of a man's estate with the payment of his debts, and, as the popular meaning of the term would include all but the personal estate, the law was construed to embrace remainders and reversions.

Our conclusion, then, is, that the language was used by the lawgiver in its popular sense alone. We have not been able to find among the adjudged cases any authorities directly in point; but some light is thrown upon the subject by analogous cases arising under statutes creating mechanics' liens. In *Winder* v. *Caldwell*, 14 How. U. S. 434, where the statute created a lien upon all buildings erected in the city of Washington, for the payment of all debts for work done or materials found by any brickmaker, mason, carpenter, lumber merchant, &c., or any other person employed in furnishing materials for, or in erecting or constructing such building, it was held that a master-builder, undertaker, or contractor, who had undertaken to erect a building, although he might be a carpenter, did. not come within the policy of the act, which, as its title indicated, was " to secure mechanics and others, payment for labor done and materials found." The court say that such persons have an opportunity and are capable of obtaining their own securities, and that they do not labor as mechanics, but superintend work done by others. It is obvious in that case that the terms of the statute were broad enough to embrace such master-builders; but it was held that such services are not to be regarded as work done within the act. So a lumber dealer, furnishing lumber to a contractor, was held not to be a person doing or performing work toward the erection of a building, although he had caused a portion of the lumber to be dressed at his mill in a particular way, by the order of the contractor. *Bent* v. *Jackson*, 10 Barb. 219. One who furnishes superintendence and skill is not entitled, in Pennsylvania, to a mechanic's lien. *Jones* v. *Strahan*, 4 W. & S. 257. So commissions for services in paying for labor and materials are not services for which the lien exists. *Edgar* v. *Salsbury*, 17 Mis. 271; 14 U. S. Dig. 416, sec. 27. A lien for labor in cutting and hauling logs and other lumber for the amount agreed to be paid for personal services, does not include the use of a six-horse team, sleds, and rigging, with which such logs, &c., were drawn. *Coburn* v. *Kerswell*, 35 Me. 126. So it is held that a mechanic who contracts to build a house, has no lien on it for his own services in superintending his workmen. *Blakely* v. *Blakely*, 27 Mis. (6 Jones) 39. See, also,

*McCrillis* v. *Wilson*, 34 Me. 286 ; *Hoatz* v. *Patterson*, 5 W. & S. 537 ; *Walker* v. *Anshurtz*, 6 W. & S. 519 ; *Witman* v. *Walker*, 9 W. & S. 183.

From these cases it would seem that, so far as we have any judicial construction of the term under consideration, used in similar statutes, the distinction suggested by us has been recognized. In the class of cases cited, the statutes under consideration were designed to facilitate or secure the payment of certain claims for labor and material, by a lien upon the buildings upon which they were bestowed. A similar purpose was designed to be effected by this exception to the provisions of our Homestead Act, and, therefore, the cases cited apply with greater force. We are aware of the decision in *Robinson* v. *Aiken*, 39 N. H. 211, where it is held that the official services of the mayor of a city, under an annual salary, must be regarded as "labor performed," within the meaning of the law relating to the trustee process. This decision was made in 1859, long after the passage of the Homestead Act, and, therefore, it can not be said that the language used by the Legislature in that act had, at the time, a known judicial construction in our own State ; and we are not disposed to extend the doctrine of *Robinson* v. *Aiken* beyond the class of cases in which it was applied.

But it is urged that the claim in this case being the note of the husband and wife, is excepted from the provisions of the Homestead Act; and by the terms of the fifth section, literally construed, it would appear to be so. But we are not inclined, however, to give it that construction. It was evidently the intention of the act to admit nothing as a release or waiver of the exemption but the explicit act of the husband and wife, by deed executed with the formalities required for the conveyance of real estate ; and it is difficult to see why the note of the husband and wife should have the effect of a release or waiver, or to see any reason for excepting such note from the operation of the act. It is clear that the separate notes of the husband and wife could have no such effect, and no good reason can be assigned for giving a greater effect to their joint note. The fifth section, in which this exception was found, was somewhat carelessly drawn ; and we think that what was intended to be excepted, was the mortgage of the homestead itself, to secure the payment of a note, both of which were executed by the husband and wife. This construction will give effect to the provisions of the first section, in relation to a release or waiver of the exemption, and will accord with the purpose of the act, and, at the same time, will do no violence to the language of this exception, as it is but changing the word "or" to "and," as suggested by the defendant's counsel.

There must, therefore, on the principle of *Fogg* v. *Fogg*, 40 N. H. 282, be

*Judgment for the defendant.*