The general act under which "The Rochester Novelty Works" was incorporated, declares that the companies organized according to its provisions, shall, annually, within twenty days from the 1st day of January, make a report stating the amount of the capital stock, the proportion actually paid in, and the amount of existing debts; and that if any company shall fail to do so, "all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made." (Laws of 1848, p. 57, § 12.) There is certainly some obscurity in this language, when we come to apply it to different conditions of fact. "All the trustees" are declared to be liable for "all debts." The most literal interpretation will undoubtedly give to the provision a broader significance than the legislature intended. For example, a board of trustees might be superseded by a new election immediately after a default, in making the report, had occurred. Of course *Page 263 
the retiring trustees would be liable for the debts then existing. They ought to be so liable, because it would be simply attaching to their own default the consequences which the statute has declared. But in a literal use of the language, they would also be liable for all future debts of the company, if their successors should also fail to make the report, although they had ceased to be trustees or even stockholders. Thus, notwithstanding the loss of all control in the management of the company and even of all interest in its affairs, they might remain liable forever in consequence of the continuing default of those who succeeded them, a default which they would have no power to prevent, any more than they would to prevent the contracting of future debts. This clearly was not the intention of the legislature.
Equally opposed, in my judgment, to the equity and good sense of the statute, is a construction which imposes upon a succeeding board of trustees a liability for debts which have become charged upon their predecessors by reason of the default of the latter. According to this construction one body of trustees may retire from office charged with all the debts of the company, because they had not complied with the law, while those who are appointed to succeed in the management cannot assume the trust, without taking also the personal burdens which the former trustees had incurred by their own neglect. This will appear the more unreasonable when we consider, that the trustees thus coming into office after a default of those who preceded them, had no power to prevent that default, and that they have none to avert its consequences. They could not prevent it, because they were not in the management when it occurred. They cannot avert its consequences, if this be the true construction of the law, because although they may, with the utmost promptitude, file a report as the statute requires, that proceeding on their part will not discharge any personal liability, either of themselves or their predecessors, which has already accrued. The liability, when it has once attached, and upon whomsoever it has attached, remains fixed and unalterable. This is plain. *Page 264 
Such an interpretation of the statute would be a most unfortunate one for these corporations; for I apprehend the stockholders would find great difficulty in electing prudent and careful trustees in the place of a reckless and improvident board, if the persons elected, at the moment of taking office, must become personally involved in all the embarrassments and debts of the company. A sounder and juster view of the question, it seems to me, is that a board of trustees guilty of the default in January, and retiring from office, is liable for all antecedent debts and for those only; and that the successors, if they continue the default until the next January, and no longer, are liable for the debts afterwards contracted during that year, and for no other. If the persons succeeding to office promptly obey the requirement of the act they will escape all liability, and it is plainly just that they should, because there is no failure of duty on their part. If they do not, they very properly incur the hazard of the debts which they themselves as trustees contract. This hazard they may be quite willing to incur; but there is neither principle nor policy in making them responsible for the acts and defaults of their predecessors. The general policy of the act is immunity from personal liability, but this is attended by certain conditions demanding the personal observance of the trustees. A single case may occur where successive boards may be liable for the same debts; and that is where there are successive defaults in January. By the express terms of the statute, the trustees omitting to file their statement within the first twenty days of that month are liable for all debts then exiting. Now the debts then existing may be wholly or partly the very debts for which their predecessors became liable, by reason of a default in the January of the previous year. But from this liability there is a chance of escape by a simple performance of the duty required, whereas if such liability is assumed by a new board by the very act of taking office, there is no chance of escape except by refusing to serve.
I construe the statute according to these views, and it is a construction which is fatal to the plaintiff's case. The corporation *Page 265 
had a board of three trustees who were in office on the 1st of January, 1857, and they neglected, in that month and afterwards, to make a report as required by the act. Two of them went out in March, 1857, and were succeeded by two others. The defendant Otis is one of the latter, and he has demurred to the complaint. This suit was brought before the close of that year to recover an indebtedness represented in two notes. One of the notes is averred to have been given on the 8th of April, 1857, for goods sold by the plaintiff to the company prior to the 1st of January preceding, and the other was given in July for goods alleged to have been sold between the 8th of January and the 5th of May, 1857. These averments fail to show that any part of the debt accrued prior to the time in March, when the change of trustees took place. Consistently with the allegation, the portion represented in the note last given might all have accrued in the month of January. The trustees chosen in March, therefore, were not liable to pay for any portion of the goods, according to the view which has been taken of the statute. If the creditor had waited until January, 1858, and no report had then been made, the case might have been different.
It is scarcely necessary, perhaps, to observe that the giving of the notes by the company does not change the result. If the new trustees, on coming into office, were not personally liable for the previous debt of the company, they plainly did not become so because notes were afterwards given for the same debt.
We think the demurrer of Otis was well taken, and that the judgment should be affirmed.
CLERKE, WRIGHT, BACON and WELLES, Js., concurred.