By the Court:

Fithian, J.
In this case two general questions arise. Hirst. Whether upon the facts stated in the complaint, any personal obligation or liability whatever is shown to exist against the defendant ; and second, if there is, what is the nature and character of that liability, and upon what is it based. It is conceded to be the settled doctrine of the courts of this country and England, that where one claims a right of action against another, upon facts and circumstances which would not authorize such right at common law, or by common right, and the right be created and the liability to respond exist solely by force of some statute, then the remedy for the enforcement of such right, given by the statute (if any) is exclusive of all others, and that only can be adopted or pursued by the claimant. This principle is settled by a uniform series of decisions cited by the respective counsel and is not disputed. And from this follows another conclusion, that where the right claimed is the creature solely of a special statute, it will not be enforced in courts or tribunals beyond or outside the boundaries of the State, by force of whose legislation the right is created or the liability incurred. Because where the statute which creates the right, hath no force, the right and liability, depending upon it, ceases. It is also held, and not disputed, that the right and liability must be measured and determined and its character ascertained by the law of the place *129 where it arose. And if that lex loci declare that the liability be one arising out of facts which by the general common law of the country would give the right and impose the obligation, then it may be enforced in all courts where such general common law is acknowledged and enfor ced, and by the ordinary and usual remedies applicable thereto. It is competent, however, for the courts of this or any other State, where such liability is sought to be enforced, to inquire and determine what is the law of the place where the liability arose ; in the absence of any authoritative determination on that subject by the courts of that locality. I will examine the questions above stated in the inverse order of statement. And assuming, therefore, for the present that the liability asserted in this case against the defendant was personal in its nature, then, is it created and does it exist solely by force of the statute of Georgia above set forth ; or, does it arise irrespective of the statute, and solely upon and .by reason of the acts and dealings of the parties hereto and their privies, between each other.and the corporation as stated in the complaint ? It is-claimed by the learned counsel for the appellants to be well settled by the decisions of the highest courts of this State, that such a right of action and liability as is asserted here, is in no respect a creature of statute, but arises at common law by force of implied dealings by the parties with each other, through their duly constituted agents. The counsel states his position thus :
“ By the common law every one who participates in the profits of an enterprise is a partner, and liable in his whole estate.
“An unqualified act of incorporation, without any personal liability clause, entirely does away with this liability.
“ If there be a personal liability clause, it is considered an incorporation sub modo—certain attributes of a corporation—the right of succession—the right to sue and be sued as an aggregate body, etc., etc., are given, but the liability of stockholders is not destroyed (not that it is created), and remains as a residtmm of the common-law liability. It is not a created liability, but the remnant of the common-law liability remaining undestroyed.
“ Our courts are not guilty of the absurdity of holding that *130 the law sets up a thing for the express purpose of knocking it down again; that the statute of incorporation destroys the individual liability, and then in the same breath re-creates it
And for this he cites a number of decisions of the courts of this State. The counsel concedes, however, that the courts of Massachusetts, and some other States—New Hampshire,Vermont, Maine, and others—hold a contrary doctrine. And he argues with much force and propriety that in such conflict this court should be governed by the authorities of this State. The question is one of interest and importance, and justifies a somewhat critical examination of the authorities, with a view to ascertain, if possible, just wherein and to what extent the eminent and learned jurists of this State have and do differ (if at all) with the courts of other States. And what, if any, general principles can be deduced from such authority applicable to controversies of this character, which so frequently arise. And in this inquiry it is convenient and appropriate to examine the authorities of our courts with reference to the provisions of the different acts or charters of incorporation, general and special, upon and under which the questions have arisen, which have been determined by the courts. For it is only by so doing that a clear idea can be obtained of the points decided and the principles established.
In the year 1811, the legislature of this State passed an act known as “ A General Act for the Incorporation of Companies for Manufacturing Purposes.” By this act, persons associated for. manufacturing purposes might become a body corporate by such names as they choose, and have and possess all the usual powers and privileges of corporations, by making and filing certificates, and complying with the conditions in the ¡statute prescribed. The seventh section of that act provided “ That for all debts which shall be due and owing by the company (organized under the act) at the time of its dissolution, the persons then composing such company shall be ivdividually responsible, to the extent of their respective shares of stock of ■such company, and no further.”
*131 There is no provision or remedy provided in the act for enforcing this responsibility, it being left subject to the ordinary common-law remedies.
“ The Dutchess Cotton Manufactory ” became and was organized and incorporated under this statute. Afterward the corporation became embarrassed and unable to pay its debts, or continue its business. It had purchased mills, machinery, and other property to a large amount of one “ Slee ” on credit, and for and on account of which it had from time to time made payments from collateral securities, etc. And, among other things, the officers of the corporation had given a bond and warrant of attorney to confess judgment to and in favor of the creditor. Finally, the corporation failed wholly, abandoned its business, and resolved to relinquish its franchise. Judgment was rendered upon the bond and warrant of attorney. All the property of the corporation was sold on execution, and a balance of eighteen thousand dollars remained unpaid in favor of Slee. He thereupon commenced a suit in equity in behalf of himself and all other creditors, against the defendant Bloom, and all other stockholders, to compel payment of the debts of the corporation, and enforce the personal liability of the stockholders, under the seventh section of the act of incorporation. The case was much litigated, and was twice before the Court of Errors (5 John. Chy. Rep., 366; 19 John R., 456; 20 John R., 669). The Chancellor held that the liability of the stockholders to answer for the debts of the corporation was by force of the statute, and by its terms the right of action against the stockholders did not arise until after a dissolution of the corporation. That upon the facts proved there was no dissolution, and if there was, the plaintiff had, in various matters, so dealt with the corporation as to estop him from enforcing his, otherwise, right of action against the stockholders individually. On appeal to the Court of Errors this decree was reversed, that court holding that there was a sufficient dissolving of the corporate body to give the creditors a right of action against the stockholders individually, and that the dealings of the plaintiff *132 with, the officers and other stockholders of the corporation was not of a character to estop and debar him .of his right of action as against all the stockholders. A new trial was accordingly ordered. On the second hearing, the principal question controverted was, whether the judgment confessed on bond and warrant of attorney, by the officers of the corporation, in favor of the plaintiff, .was of any force or effect against the stockholders, as evidence of the amount which plaintiff was entitled to recover. The Chancellor held that the judgment was prima facie evidence only of the amount of plaintiff’s debt, so that, in the first instance, he need not be put to any other proof of such amount, but that it was open to the defendants to interpose every defense that the corporation could have done in a suit by the creditors against it. So he permitted a general inquiry and accounting of and concerning all the transactions and dealings of plaintiff with the corporation and its stockholders from the beginning. On appeal from this decision, the Court of Errors, Spencer J., again reversed the Chancellor (Kent); and upon this ground substantially, that when a person becomes a stockholder in one of these corporations organized under the act of 1811, he must be deemed to have done so with l&nowledge of the provisions of the act in respect to the personal responsibility of the stockholders, and of the power of the agents and officers of the corporation to bind it, by confession of a judgment, and by contracting debts, and adjusting and fixing the amounts thereof; and that the stockholders must impliedly, by force of the statute, be deemed to have assented to all this in favor of whomsoever it might concern Spencer, J., therefore held, that the stockholders were “ individually liable to the same extent as the corporation, and that whatever was a debt against the corporation was, hy force of the statute, a debt against the stockholders, and if the company was concluded, the stockholders equally were by the judgment.” That, while it was true as an abstract proposition that the trustees and agents of the body corporate were not tire agents of the individual stockholders, and could not bind them beyond the corporate funds—yet as they were bound for the *133 debts of the company, so by force of the statute, the trustees of the corporation were, with the implied assent of the stockholders in becoming such, made the agents not only of the corporation, but of the stockholders, not only to contract the debts but to adjust and liquidate the amount thereof; “ wherefore,” says the Chief-Justice, “ I must .conclude that the respondents are chargeable with the appellants’ debt, on the principle that the trustees, as their agents, have contracted this debt, and because the statute fixes thevr liabilityor in other words, that even if the obligation of the stockholders to pay the creditors be held to arise out of the contract between the creditor and the agent of the corporation, yet it is the statute that declares it shall so arise, and that impliedly clothes the agent with power to bind the stockholders by his contract. And the statute it is, in the language of Justice Spencer, “ that fixes the liability.” The conclusion was therefore that the judgment against the company was as conclusive upon the stockholders as upon the body corporate, as to the existence and amount of the debt. . And that it could only be impeached on the ground of fraud and collusion between the agents of the company and the creditors, or clear mistake in ascertaining and computing the amount. So far therefore as this case is an authority at all on the question, it is to the effect that the liability of the stockholders in corporations, organized under the Act of 1811, is a “ statutory liability.”
In 1852, the legislature of this State (Laws, chap. 361), in order to facilitate the dissolution of certain manufacturing corporations in the County of Herkimer, organized under the act of 1811, passed an act authorizing these corporations, on the arising of certain specified contingencies in their affairs, .to become “dissolved” by voluntary resolution of the trustees or directors in the manner in the act provided. The act further provided that, upon so becoming “ dissolved,” all the property and assets of the corporation, including the liability of the stockholders for unpaid debts, should thereupon become the property of the creditors to the amount of their debts; and that there *134 upon the trustees or directors of the corporation should be “ trustees” for the “ creditors,” with power to collect debts, etc., and enforce the personal liability of the stockholders for the payment of creditors, etc., with power vested in the courts to remove such trustees and appoint others, or a receiver.
Under this statute litigation arose. It had been previously decided by the courts, in Peniman v. Briggs (Hopkins’ R., 300; 8 Cowen R., 386), that on the happening of the events which the courts had held were sufficient practically to work a dissolution of these corporations, a creditor might maintain a suit in equity, in behalf of himself and all other creditors, against all the stockholders, to wind up and adjust the affairs of the corporation, collect its assets, apply them in payment of debts, and enforce in the same suit the personal liability of the stockholders, respectively for any deficiency. And in Bank of Poughkeepsie v. Ibbottson (24 Wen., 472), it had likewise been held that an individual creditor might, if he choose, have his action at law against a .single stockholder to enforce against him alone the several and personal liabilities prescribed by the statute. That the two remedies were co-ordinate and at the option of the creditor. After the passage of the act of 1852, however, the Supreme Court, in Walker v. Craine (17 Barbour, 119), held that such act did in effect abolish both these remedies as to the corporations in the county of Herkimer, to which it related. And that, thenceforth, the only remedy to enforce the personal liability of the stockholder in those corporations was in a suit by the “ trustees ” or “receiver” under the provisions of that act. It was objected at once, that “ inasmuch as the liability of the stockholder was not founded upon the statute, but upon the contract of indebtedness between the creditor and the whole body of stockholders, as partners or voluntary associates, that depriving the creditors of both these remedies was such an interference with the remedy as substantially to impair the obligation of the contract, and, therefore, the act of 1852 was unconstitutional. But the court, Gridley, J., held otherwise. Because, even if it be true that the liability of a stockholder is to some extent in the nature of a *135 contract obligation, still such contract (if one) arises wholly by implication from the language of the statute, and exists by force thereof. And this, because the contract or obligation created by the act of incorporation is essentially other and different from the obligation or liability arising at common law from a contract of indebtedness between a creditor and the agents of a partnership or unincorporate association. 1. By the statute the stockholder is made liable for debts created when he was not a member of the association. 2. His liability is a limited one. 3. He is liable for debts against the corporation, sounding in tort, where there was no contract whatever. The court says, that if the liability was chargeable only upon those who were members of the corporation when the debt was contracted, and was in “ solido ” for the whole indebtedness without limitation, there might be some reason in that case for treating the stockholders as a party to the original contract of indebtedness in the nature of a “ surety or guarantor ” for the payment of the corporation debt, as in the case of Corning v. McCulloch (1 Comstock, 47). But, in this case, says the court, the obligation is not “ binding upon the stockholder, because he has in any sense contracted or agreed to pay, but because the statute has enjoined it u/pon him as a duty” And further, that when the Constitution and the laws speak of a “ contract,” or the “ obligation of a contract,” somejpractical, and not mere theoretical agreement to do or not to do a particular thing is meant. And so here the liability of the stockholder is a “duty to pay,” because the statute “has enjoined it, and not because the parties have entered into any contract to perform it.”
In Story v. Furman et al. (25 N. Y. R., 214), Smith, J., who delivered the opinion in that case, dissented from the reasoning and conclusions of Gridley, J., in the case last cited. In this case, Story was appointed, under the act of 1852, a receiver of the property, etc., of the “ Woolgrowers’ Manufacturing Company,” a corporation organized by virtue of the- act of 1811. The plaintiff brought his action as such receiver against Furman and others, stockholders, to enforce the personal liability for the *136 unpaid debts of the corporation. Two questions only were discussed—First. "Whether the act of the legislature of 1852, providing for the appointment of a receiver of these corporations, did or not impair the obligation of any contract, so as to render it inoperative and void under the United States Constitution. In considering this question, Smith, J., took occasion to dissent from the reasoning and conclusions of Gridley, J., in Walker v. Craine, as before stated, and used language indicating that he intended to hold that the liability of the stockholders in these corporations was a common-law obligation, the same as that incurred by partners or voluntary associates in an unincorporated company, for debts created by the agents or managers. The difficulty in the way of this construction, however, and one which the learned justice does not satisfactorily remove, is the fact that by the act of incorporation of these companies persons are made liable for the debts of the corporation incurred and created when they were not members of the company—a liability which never could arise at common law against such partners or associates. This is sought to be avoided by asserting that every person who became a stockholder in the corporation subsequent to its organization, and becoming indebted, must be deemed to have agreed and assumed to become liable to the creditor as well for debts previously existing as those subsequently contracted. It is conceded that no such assumption or argument could be presumed or asserted against partners at common law with respect to debts contracted' before they became members. The justice, therefore, is compelled to and does concede that the authority to make such assumption and presume such an agreement against the stockholder, is derived exclusively from the statute, and exists by its force. He says: “Each new stockholder, by assignment, was to assume the liability of the original parties.” How assume it, and wherefore ? Such was certainly not the case at common law with new partners. It is not pretended that there was any agreement so to do between such subsequent stockholders and the creditor; for, in the absence of proof on that *137 subject, it is not to be presumed that the subsequent stockholders had any knowledge of the existence of any creditor-The stock is personal property, transferable in open market by assignment and delivery of scrip. How then is it to be assumed that every purchaser of such scrip is to be held to “ assume ” the liability of other persons for debts _ created when he was not a stockholder % Simply because the statute says he shall. The act of incorporation charges this “ liability ” upon each incoming stockholder, and presumes his assent thereto, and the courts will not permit him to dispute such assent. In that respect, therefore, the liability may be said to be in the nature of a conotract. But the charter is the contract, and without that none would exist. And this was substantially conceded by Justice Smith, for he says: “ By force of the act one partner may retire and new partners come in assuming their liability, and this was one of the chief designs of the act.” I cannot suppose, therefore, that the learned judge meant to hold that this assumed liability, which was thus conceded to be by “ force of the statute,” was a liability arising at common law independent of the statute. If, however, as is probable, the court intended only to decide that • this liability, whatever may be its character, was so far in the nature of a contract that the obligation thereof, whether by statute or at common law, was protected by the Constitution, then the decision is consistent with itself. This was probably all the court intended to hold, for the justice speaks of the “ obligation of the contract ” as an “ agreement or duty of the stock- ' holders under the act to pay to the creditors, etc., and that the act of 1852 does not take away, release, or discharge this liability.” In this view of the case it was wholly unnecessary to discuss or determine this question in order correctly to decide the constitutional question before the court in Story v. Furman, or Walker v. Oraine, for both judges concurred in their respective opinions that, irrespective of the character of the liability, whether at common law or by statute, it was in no manner altered or impaired by the act of 1852, so that the whole discussion as to the nafure and character of the liability was “ dictum,” and expressly *138 stated so to be by Gridley, J., in Walker v. Craine; interesting and entitled to respect as the opinions and arguments of two very able judges, but not binding as authority.
Van Hook v. Whitlock (7 Paige, 373) was a suit in equity to enforce the personal liability of stockholders in the “ Commercial Insurance Company.” By the charter of that company, the persons who should be stockholders at the time of its dissolution were declared responsible in their individual and private capacity to the extent of their stock for all debts contracted previous to 1830—the expiration of the charter. The defendants (the stockholders) set up first the statute of limitations, and also a discharge under certain insolvent proceedings authorized by statute in respect to these insurance companies. The limitation statute relied upon was in these words, “ That all actions, etc., which shall at any time hereafter be brought for any forfeiture or cause, upon any statute made or to be made, the benefit and suit whereof is or shall be given or limited to the party aggrieved, shall be brought within the space of three years next after the offence committed, or to be committed, or the cause of action occurred, and not after.” The suit here was not brought within three years after the liability of the stockholders accrued, and the question was whether this action was one within the provisions of that limitation section. The Chancellor held it was. That it was an action for a “ cause upon a statute ” solely. He therefore dismissed the complaint on this ground, and also «upon the ground that the stockholders had been discharged by the insolvent proceedings. On appeal to the Court of Errors, the Chancellor’s decree was affirmed on the last ground. As to the limitation statute, the court, Spencer, J., held that this statute was intended to apply only to actions for causes arising upon statutes imposing forfeitures and penalties, or penal in its nature, and not to causes of action arising upon statutes creating liabilities in the nature of civil contracts merely; and whether the cause of action here was upon the statute or not, it was not within the above limitation act.
Moss v. Oakley (2 Hill R., 265) was an action to recover *139 against defendant as a stockholder in the “ Eossie Lead Company,” a corporation created by special act in 1836. The charter provides that the stockholders shall be jointly and severally liable for all debts or demands contracted by the corporation, or its authorized agents. And any person, having any demand against the corporation, may sue any stockholder or director, in any court having cognizance thereof, and recover the same, with costs. First, however, having obtained a judgment against the corporation, and an execution returned unsatisfied, “or the said corporation have become dissolved.” The action was to recover on a promissory note made by the corporation for $2,000 and over. Moss, the plaintiff, had obtained judgment, and execution returned unsatisfied for the amount of the note and interest against the corporation, and then claimed to recover of the stockholders. Various legal questions arose; one was how far the judgment was evidence against the stockholders of the amount claimed; and whether it was necessary to show that the defendant was a stockholder at the time of the suit brought, as well as at the time of the debt contracted. The language of the charter was broad enough to charge. dll the stockholders who were such at the time of suit brought with the payment of the debts, irrespective of whether they were such stockholders or not at the time the debt was created. La discussing this question, Bronson, J., held that the legislature intended by this charter to leave these stockholders to their common law liability for debts of the company, the same as if they were partners, unincorporated, except that the liability was made several as well as joint. And inasmuch, as without any statute, only those who were members of a firm or company when a debt was created,, were liable, so here it must be held that those stockholders only who were such when the debt was created could be held liable.
He also held that the stockholders were so far “ privies ” to the judgment against the corporation that it was prima facie evidence of the amount of the debt as against the stockholder.
Afterwards, Moss sued McCulloch also for the same debt (Moss *140 v. McCulloch, 5 Hill, 131). At the Circuit plaintiff had a verdict. On appeal to the General Term the court, Cowen, J., held that on becoming a stockholder the defendant subjected himself to liability according to the terms of the statute. And, that by the true construction of the charter, the stockholders became liable as “guarantors” for all the debts of the corporation, on condition that a judgment be first obtained against the corporate body, and an execution thereon be returned unsatisfied. That the artificial person, the corporation, is the principal debtor, and that “ independent of the statute the stockholder is no more liable to be sued than a stranger.” The corporation and the stockholder, in legal contemplation, are distinct individuals. It is true the stockholder, on becoming such, does impliedly contract with the creditor that he will pay all debts of the corporate body in case the creditor shall be unable to collect the same of the corporation on judgment and execution. But that such contract exists by force of the statute, and not otherwise ; and as it was the creditor’s duty to exhaust his remedy against the corporation by judgment and execution before the liability of the stockholder could in any way arise, that, therefore, the stockholder was in no manner a party, or privy to the judgment. He was not liable for the costs of obtaining it, and in no way bound by it. In this decision, Bronson, J., and Nelson, J., concurred. A new trial was granted. In the second trial, the plaintiff had a verdict and judgment, which on appeal to the General Term was affirmed, and the case went to the Court of Errors, where the judgment was again reversed; but on what precise grounds does not appear, as the case is not reported in the Court of Errors. It came back for trial the third time before Parker, J., who nonsuited the plaintiff on the ground, among others, that the judgment was not evenprima facie evidence against the stockholders. On appeal from this nonsuit to the General Term, Willard, J., delivered a lengthy opinion, holding that none of the questions in the case had really been settled by the Court of Errors. He holds, in express terms, that the liability of the stockholders is a “ liability created by statute,” but says that it is *141 not that of a “ guarantor ” or “ surety,” but that of a “ principal debtor.” That the liability attaches the moment the debt is created, and continues until it is paid. It follows the debt into whosesoever hands it goes like the liability of the corpora- • tion. He held that by force of the charter a stockholder, on becoming such, must be presumed to stipulate with all whom it may concern—that the agents of the corporation are the agents of the stockholder, so far forth as to bind him by a. debt contracted—a judgment properly obtained, or an account adjusted and determined. And that the judgment against the corporation was not only prima facie evidence against the stockholder, but was conclusive, unless impeached for fra/ud or mistalee. The nonsuit was set aside and another trial ordered, where the case appears to have ended, so" far as any report is to be found.
So in Baily v. Banker (3 Hill, 188). The defendant was sued as a stockholder in the “ Bossie Galena Company,” a corporation organized and incorporated at the same time and under a precisely similar act with that incorporating the “ Bossie Lead Company,” to recover for a debt against that company. It appeared that the plaintiff was himself a stockholder; whereupon, the court, Bronson, J., held the plaintiff could not recover; that the liability was that of partners in an unincorporated company, and as one partner could not sue another at law for any partnership transactions, so one stockholder in these corporations could not sue another at law. And, to the same effect, is the decision of the court, Bronson, J., in Hagar v. McCulloch (2 Denio, 119), where it was held that the stockholder in the “ Bossie Galena Company ” was liable as aprwuyvpal debtor, and not as “ surety.” And, therefore, he was not discharged by an extension of time to the corporation. Freeland v. McCulloch (1 Denio, 414) was an action to enforce the personal liability of a stockholder in the “ Bossie Galena Company ” for a debt against the corporation in favor of the plaintiff. The defendant, among other things, pleaded the statute of limitations, the same as set forth in Van Hook v. Whitlock (7 Paige, 373, supra). To this *142 there was a demurrer. The Supreme Court, Jewett, J., overruled the demurrer, and held the plea of limitation to be a good bar to the action. He holds the action to be entirely upon the charter, “independently of the provisions of which there would be no cause of action, legal or equitable, against any stockholder individually for a debt owing by the company,” and that therefore it was a case within the limitatipn statute, and must be brought within three years. And for the same reason the court decided the similar case of Corning v. McCulloch in the same way. It will be observed here that the question mooted in the Court of Errors in Van Hook v. Whitlock (26 Wend., 43) as to whether this limitation statute applies to any actions except such as are founded upon statutes imposing penalties and forfeitures, was not raised, nor was it considered by Justice Jewett in this case.
Corning v. McCulloch, above mentioned, was appealed to the Court of Appeals (1 Comstock R., 43). In that court ¡Nicholas Hill, counsel for plaintiff, and against the plea of the statute of limitations, argued: 1st. That the action was not alone upon the act incorporating the “ Eossie Galena Company,” but upon a common-law liability arising from the contract of indebtedness between plaintiff and the corporation, and was not therefore an action “ upon a statute ” within the meaning of the limitation act; and 2d. If he be wrong in this, and the action be one wholly or partly based upon the charter of the company, still the statute of limitations above set forth was intended to embrace only actions for penalties and forfeitures, and other causes of the like nature, and not to actions for the recovery of money due upon any contract either express between the parties or created by statute.. The opinion of the court Avas delivered by Jones, J. It is able and exhaustive, and, with one exception, neither cites nor alludes to a single authority. He proceeds, first, to inquire whether this action by the plaintiff against the stockholder, for a debt he held against the corporation “be strictly and technically an action upon a liability created by the act of incorporation of the Eossie Galena Company.” *143 He holds that it is not; that the intention of the legislature was to incorporate the “ Eossie Galena Company” with qualified corporate capacity, but leaving the stockholders personally liable for the debts of the company in all respects as if not incorporated. And that, therefore, when the plaintiff sold his goods to the corporation, he sold them to the individual stockholders as well. And that each and all the persons then being stockholders, became and were, eo instante, personally liable to the creditor to pay that debt as one of their own contracting. And that this action was upon that liability, and not upon or by force of the act of incorporation. He then proceeds to demonstrate, with much force and clearness, that even if the case was foimded upon the statute of incorporation of the company, still it was not an action within the three years’ limitation statute, because that provision applied only to suits for penalties or forfeitures, and causes of like nature, arising upon statutes, penal in their character. Bronson, J., concurred briefly in both positions; and said his acquiescence in the decision and opinion of Jewett, J., in Freeland v. McCulloch was through inadvertence. " And to the same effect was the case of Allen v. Sewell (2 Wend., 327). The defendants were sued as stockholders of the “ Dutchess & Orange Steamboat Company,” to recover for a package of money intrusted to servants of the company for transportation. The act of incorporation provides “ that the members of the company shall be liable individually in the same manner as ca/rriers at common la/w for the transportation of all goods, wares, and merchandise delivered to the agents of the said corporation, and for all contracts which shall be made by such agents relating to the business of the corporation.” The court, Cowen, J., held, and could not very well have held otherwise, that under this charter the common-law liability of the members of the company was in no manner removed or affected by the act of incorporation, for the act, in express terms, so says.
And so in ex parte Van Riper (20 Wend., 614). The plaintiff in that case commenced a suit by attachment against Tan Eiper as a non-resident, to charge him and Ms property with a *144 personal liability as a director and stockholder in the “ Bank of Belleville,” Hew Jersey, for a check signed by defendant as president of said bank. The charter of that bank provides that the “ president and directors shall jointly and severally be and continue liable individually to every creditor for the payment of any bills, obligatory, etc., that they, or any of them, may issue or circulate. And that upon demand of, and refusal to pay, by the bank, an action may be brought against the persons acting as president and directors jointly and severally. And the plaintiff may declare generally for money had and received.” It was objected that this was an action based upon a liability created solely by a statute of Hew Jersey, and could not be enforced out of that State; and at best the remedy provided by that act must be pursued, which was a personal action at law, and not a proceeding in rem by attachment. The court, Oowen, J., held that the check and notes in suit being made by the defendant himself as president of the bank, and the charter expressly declaring that the president should be personally liable for all such checks and bills, it must be treated’ as his individual contract, and that he became liable on the contract itself as though made by him in his individual character. That as to the remedy, the charter had prescribed no specific or particular remedy, but had given the same remedy as the general common law, viz.: a personal action, which in its nature was not exclusive. The court says, however, “ Ho doubt a State may pass a law tying a creditor up to a certain remedy on a contract,” etc. But the case at bar presents no such instance. Yet it will be observed that in Moss v. McCulloch (5 Hill, 131) Cowen, J., held the reverse of his opinion in this case of ex, parte Van Riper; and doubtless this, because in his opinion the charters of the “ Bank of Belleville ” and of the “ Rossie Lead Company ” were essentially different ; and while under the former statute it could well be held that the common-law liability was left undisturbed by that charter, yet in the latter act the legislature had created another and different liability, viz., that of surety and guarcmtor.
This review of the authorities discloses much conflict *145 of opinion and authority in the courts of this State on the question at issue, whether the liability or obligation resting upon a stockholder to apswer personally for the debts of the corporate body, be one arising out of the original contract of indebtedness between the creditor and the corporation, or whether it be altogether the creature of the statute of incorporation. I am unable to deduce, from these decisions, any general principle upon the question, applicable to all acts of incorporation containing the personal liability clause, but only that the nature of the liability, whether “ statutory ” or otherwise, must depend altogether upon the precise language and provisions of each particular act of incorporation. For instance, the general act of 1811, for the organization of manufacturing corporations, contains provisions, in my opinion, essentially different from those of the New Jersey act in ex parte Van Riper, the act incorporating the Dutchess and Orange County Steamboat Company in Allen v. Sewell, that of the Commercial ' Insurance Company in Van Hook v. Whitlock, and the acts incorporating the “Rossie Galena” and the “Rossie Lead Companies.” That- essentialzand material difference is found in the provisions in the act of 1811, declaring all persons who were-stockholders at the time of the dissolution of the corporation liable for all debts, irrespective of whether they were or not such-stockholders at the time the debt was created. I think it must-be considered settled by the authorities that in respect to corporations organized under this statute, the liability of the stockholder is solely a creature of the statute. If there be any “ dictum ” in Story v. Furman to the contrary, it must be disregarded. For there can be no pretence that at common law any one could be held liable for a debt against a partnership or association of which he was not a member at the time such debt was created, and in no manner whatever connected with the transaction out of which the debt arose. To hold otherwise would be to base a decision on a conceded falsehood as to a matter of fact, which no court can ever intend to do.
In respect to the other incorporating acts, above referred to, *146 and particularly those incorporating the “ Eossie Galena ” and “ Eossie Lead ” Companies, it must be conceded that the authorities are the other way, holding the “ liability ” in these cases to be that of a principal debtor, and original contractor of the obligation, the same as the liability of a member of an incorporated firm to pay a debt created by the agent of the firm of which he was at the time a member. While a construction leading to this conclusion might very well be given to statutes which merely declare the personal liability of the stockholder, and presenting no special or particular remedy, but leaving him liable, generally and immediately, to the full extent in all respects as the corporation itself; yet, when this construction comes to be applied to another class of statutes which go further, and attempt to, and do legislate to some extent in respect to the common-law “ liability,” such as changing it from joint to joint and “ several,” limiting it to the amount of stock held—suspending it until after judgment and execution against the corporate body, etc., as in the “Eossie Galena” charter—a practical difficulty arises in applying to such an act the rule of construction adopted in Corning v. McCulloch. And that difficulty is the question—what is to be done with this legal entity, the “ body corporate ?” Its existence cannot be ignored. Here is an artificial being, created by a higher authority than the court, and substantially clothed with all the powers of a natural person. It is expressly authorized to have a corporate and personal name, and seal, and identity, in and by which it may prosecute and defend suits, in all courts, buy and sell, take and hold property, make contracts, contract debts, and incur express, as well as implied, “ liability ” therefor. This artificial being it is that creates the debt, aud in the first instance incurs, or at least initiates, that “ liability,” to which the stockholders in certain contingencies must respond. When it is sought, therefore, to declare the stockholders’ liability to be in all respects that of partners and joint obligors as to the creditors, the same as if there was no “ corporate body,” when, notwithstanding, there is a corporate body, which cannot be ignored, and which is *147 the direct and principal party to the contract of indebtedness, it becomes important to determine what relation the stockholders and the creditor sustain to such “corporation” in the premises. The corporate body is there, and is liable for the debt as well as the stockholders. Is it, then, a partner, and joint and several obligor with the stockholders ? Cowen, J., in Moss v. McCulloch (5 Hill, 131), says no. For to so hold would be absurd, and “ violate all analogy.” It would be to make a stockholder a partner with himself, as well as his co-partners. Such a relation “ would be a felo de se /” for, in such case, a judgment against the corporation—one partner— would, at common law, extinguish the debt as against the other partners, the stockholders. He claims, therefore, that the obvious, natural, and logical construction to be given to the relation is, that the body corporate is the principal debtor. And that the liability of the stockholder’is, under the statute, in the nature of a “ surety ” or “ guarantor ” to pay the debt to the extent of his stock, in case the creditor should be unable to collect it by a judgment and execution against the principal debtor, viz., the corporation. Bronson, J., acquiesced in this construction in Freeland v. McCulloch (1 Denio, 414). But as such construction would be adverse to the doctrine of Corning v. McCulloch (1 Comstock, 47), Justice Bronson, in the latter case, stated his acquiescence in Freeland v. McCulloch was through inadvertence. Amd so the difficulty above suggested as to what is the true relation of the stockholders to the “ corporate body,” upon the construction of the statute, adopted in Corning v. McCulloch remains unexplained and unremoved. Bronson, J., does not attempt to define it in Moss v. McCulloch, nor does Jones, J., in Corning v. McCulloch, possibly for the reason that it was easier to ignore it than to explain it.
Thus it will be seen that the doctrine and conclusion in Corning v. McCulloch was not reached without a struggle. It was dissented from by such names as Chancellor Kent, Chief-Justice Spencer, Lieutenant-Governor Gardiner, and others of the old Court of Errors, Justices Cowen, Kelson, Jewett, Willard, *148 and Parker, who, it will not be claimed, were in any respect inferior in learning and ability to the learned judges in Corning v. McCulloch.
Upon the whole, therefore, I conclude as to the decisions in this State, that inasmuch as the question at bar was not directly up in any of the cases, with exception, perhaps, of ex fa/rte Yan Biper, but only indirectly, as a means of aiding in the determination of other questions, the doctrine of Corning v. McCulloch (1 Com., 47) should not be extended, or held to be authority, except in cases arising upon statutes precisely simila/r, and in all respects in j?ari materia, with the act upon which that case arose. And this I think to be in accordance with the current of authority since the decision of that case, for it has been uniformly held in cases arising upon the existing statute of this State, authorizing the formation of corporations for manufacturing, and mining, and other purposes, that the stockholder’s liability under that act was a creatv/re of the statute alone, and not that of a principal debtor, arising out of the contract of indebtedness (Boughton v. Otis, 21 N. Y., 261; Chambers v. Lewis, 28 N. Y. Rep., 454; Woodruff Iron Works v. Beach, 4 Bosworth R., 406).
The inquiry follows, then, whether the statute of Georgia, incorporating the “North-western Bank of Georgia,” is so, in all respects, similar and analogous in its provisions to the charter of the “Bossie Galena Company” as that, in the courts of this State, it must needs have the same construction as is' given to the latter act by the court in Corning v. McCulloch. I am clearly of opinion there is no such analogy. The theory of Corning v. McCulloch is that the intent of the legislature, in and by'the statute in question in that case, was to withhold from the corporators full and absolute corporate capacity and privilege, and only half incorporate them, so to speak; leaving them in respect to liability for debts of the corporate body in the same condition as if members of an unincorporated association. And this intent is inferred, not from any express language to that effect contained in the act, but solely from the personal liability clause; which, it is claimed, must be considered as a qualification of the sentence *149 granting corporate powers and privileges. And that, therefore, it is not to be supposed that the legislature would intend to go through the meaningless form of granting a privilege or exemption, and, in the same sentence, taking it away again. And, that although the language of the act had taken that form, yet it must be held the intent was not to confer the privilege or exemption. On examining the Georgia statute, however, it appears there is no express provision upon which such intent can be predicated. If the stockholders in the “Eorth-western Bank of Georgia ” are to be held personally liable generally for debts of the corporation, it is not by express terms of the act of incorporation, but constructively, and by inference only, from what may be supposed to be equivalent terms. And it is going too far to base upon such an inference the farther presumption that the legislature intended by the act to confer only partial and qualified corporate powers and privileges, leaving the stockholder to the common-law liability of a partner or joint debtor for the corporate debts. On the contrary, it seems clear to me that the respective clauses and provisions of the statute construed either together or separately indicate an intent on the part of the legislature itself to measure and determine, with certainty and precision, the “ liability ” assumed by any person on becoming a stockholder in, or member of, such corporation; and at the same time, and with equal certainty, to declare and 'prescribe for the creditor a specific and particular remedy for the enforcement of such liability, thus exempting both from the uncertainty always attending implied contracts, which the parties never actually made, and general remedies, varying, as do the laws and practice of the courts of different States and communities. I conclude, therefore, that the “ liability” of the defendant as a stockholder in this corporation, whatever may be its character, is one “ created ” by the statute of incorporation, and exists by force of the statute, and not otherwise, and can only be enforced in the State of Georgia, and in the mode and manner prescribed by the act of incorporation.
The question is one entirely of legislative intent. Those who *150 claim that the common-law liability remains in corporations of this character do so wholly upon the ground that, inasmuch as the only effect of incorporation, in respect to liability, is to exempt the stockholder „ from his common-law liability to pay the debts of the company, when the act of incorporation contains a clause declaring that the stockholder shall nevertheless “be liable ” for the debts; that shows a dear intent of the legislature not to exempt him from his common-law liability. Admitting the correctness of this position, it necessarily follows that if there be no words in the act declaring the stockholder personally liable, or if it became necessary to find a personal liability by inference, then there is nothing to show a legislative intent not to relieve or exempt the stockholder from his common-law liability as a partner. But the full unqualified language of the incorporating section of the act must have its full force and effect, exempting the stockholder from all common-law liability, and subjecting him to such responsibility only as is expressly-created and “ prescribed by the statute.” This appears to me so clear that it cannot be strengthened by any amplification.
There is remaining, however, a still more important question in this case. And that is, whether there is any personal or individual liability at all imposed or charged upon the stockholders in this corporation. The statute under consideration differs in this respect from any and all the other acts of incorporation herein alluded to. In those acts the personal liability of the stockholder is expressly and explicitly decla/red. He shall be “personally” liable or “individually” liable. In every case the liability is expressly charged upon the person of the stockholder. In the Georgia act, however, the liability is not charged upon th & person ; but it is “ the private or individual1 property' of each stockholder that shall be liable,” etc. I am aware it may be said that the idea of properly is always associated with some person or persons, as owner or owners, and that to charge all a man’s property with a liability is precisely equivalent to charging his person, so far as the relation between the person and the property, as an owner, is concerned, and it is only such relationship *151 that the law contemplates here; not any liability of the person, in the sense of bodily arrest or imprisonment. I acquiesce in the force of this reasoning, which was clearly and forcibly urged by the learned counsel for the plaintiffs. Nevertheless, it cannot be denied, as intimated by the court in ex parte Van Riper, that the legislature may, if it choose, distinguish between property and the person of its owner, and so legislate as to charge the one, and exempt the other from liability; in which case, if the property only is charged, it would be very clear that the person of the owner could not be subjected to an action or suit to reach the property; and unless some other specific remedy was provided, it would be the case of a right given by statute, and not only no remedy provided, but the ordinary common-law remedies excluded, in which case the right would fail for want of a remedy. In this case if the Georgia act had stopped with the declaration that the individual property of the stockholders should be liable for the debts of the corporation and provided no remedy, or merely given the creditor an action at law against the person, to enforce the property liability, as in the case of the charter of the “Bank of Belleville” in ex pa/rte Van Riper, it might well be held that it was the intention to subject the person, as owner of the property, as well as the property itself to liability, or at all events to charge the property through and by means of the ordinary common-law remedy of a judgment and execution against the person ; and that the failure to use express and apt words charging liability upon the person of the stockholder as well as the property, was a mere inadvertence, or gomsus omissus. But the act of incorporation in this ease goes much farther. It not only omits all words of liability in respect to the person (except as hereafter stated), but uses fit and apt words to charge the ¡property, which would be wholly unnecessary if the person was intended to be charged as well; and then provides a particular remedy, or manner of enforcing the liability, enabling the creditor to reach the property and subject it to the payment of his debt, without any kind of interference whatever with the person of the owner, without suit or any kind of process, or even by *152 notice to or against the owner. Certainly such peculiar provisions in an incorporating act could not have been adopted without a particular intent and purpose, and that clearly was that the creditor should not be required to take, nor the stockholder be subjected to, any suit or legal proceedings against him; but that the suit against the corporation should be deemed and taken as a proceeding in rem, against the individual property of the stockholder. Indeed, the act expressly so says thus: “ Judgment obtained against said bank by any creditor shall not only bind the property of said bank, but shall also bind the individual property of each stockholder to the amount of his stock, without the necessity of bringing any suit against the stockholders? I have not overlooked the words in the last part of the 18th section of the charter, prescribing the effect of process served upon the president and cashier, and judgment obtained thereon, and adding the words, “ each stockholder to be liable in proportion to the amount of his stock for the entire indebtedness of said bank?
By every rule of - construction this language must be read in connection with the “ liability ” spoken of in the first part of the section. There the nature, kind, and character of the “ liability” intended to be imposed, was expressly defined, while the words above quoted are found in those provisions declaring what shall be the effect of certain remedial proceedings for the enforcement of such previously defined liability. Construing the two provisions together, therefore, and the preceding words declaring the effect of a judgment against the bank, it becomes necessary to prefix before the word “ each,” above quoted, the words, “ the property of,” and then the two provisions will be entirely consistent, and in harmony with each other.
The words printed on the bank bills, and the manner of executing, indorsing, and circulating them, do not, in my opinion, in any manner change or affect the nature and character of the “ liability.” The defendant signed the notes in his official character as “President.” And, unless he was without corporate protection and exemption from liability, as I have endeavored to *153 show he was not, then he incurred no personal liability in so signing, for he acted in his official and corporate character, and not individually. The words printed upon the bills as to the “liability” were in substance the same as contained in the charter, and did not express or assert any other or different “ liability ” than that provided by the act.
I am unable to see how the position of the learned counsel for the plaintiffs is strengthened or improved by his claim and argument that this complaint contains facts sufficient, and might be considered as a complaint upon the judgment against the bank. Admitting that to be so, it appears the judgment is not against defendant; nor does he, on the face of the record, appear to be a party, or in any way connected with the judgment, unless it may be in his official character as president. And, if so, it has been repeatedly held in this State that a suit against the “president ” of the bank, and named as such, is a suit against the corporation, and not the individual officers. If the plaintiffs had counted upon the judgment alone, then they must have failed for want of privity or connection between the judgment and the defendant. They rely, therefore, upon the other facts stated in their complaint, in connection with the judgment, to charge the defendant with a liability to pay the debt upon which the judgment was recovered. And if it appears affirmatively from all these facts that the defendant is not, nor was at any time, personally liable to pay that debt, of course the action must fail.
In conclusion, therefore, I am of opinion: First. That by the provisions of the statute of Georgia there is no personal liability whatever charged upon the defendant, and he is exempted, by becoming a member of the corporation, from any liability which would' attach to partners. or associates in business if not incorporated. And, second: If there be any “liability” whatever, for which the defendant could be made answerable in a suit at law, it is a special statutory liability in the nature of a “ specialty ” .eistiyd and existing solely by force of the statute of Georgia, whim, has at the same time provided a particular and specific remedy for the enforcement of *154 that liability; and that within the well-settled principles stated in the first part of this opinion, such a liability can only be enforced in the courts of the State where the statute creating it exists, and in the mode and manner provided by that statute.
In these conclusions I am sustained by the decisions of the courts of Georgia (Lane v. Morris, 10 Geo. R., 162; Lane v. Thornton, 11 Geo. R., 497), as well as those of Massachusetts, Vermont, Hew Hampshire, and Kentucky (Halsey v. McLean, 12 Allen’s R., 438; Erickson v. Smith, 4 Allen, 233; 9 Foster, N. H. R., 147; Pickering v. Fisk, 6 Ver. R., 102; Bank of the U. S. v. Dallam et ah, 4 Dana, 584). I do not, however, place my decision upon the authority of these cases alone, but upon what I conceive to be the principles settled by the courts of this State, and applying those principles to the somewhat peculiar provisions of the Georgia statute. The judgment of the Special Term must be affirmed with costs.