## FRANK B. CHAPMAN, RESPONDENT, *v.* GEORGE F. COMSTOCK, APPELLANT.

*Director of a corporation — liability of, in case of a failure to file an annual report — statute of limitations — presumption that prohibited powers have not been exercised — a deposit made in violation of law becomes due immediately.*

In an action brought to charge a director of a corporation with a debt thereof, by reason of the failure of the directors to file an annual report of the condition of the corporation as required by law, it appeared that the plaintiff held a promissory note made by the Onondaga Coarse Salt Association, which, being about to

wind up its business, deposited with the American Dairy Salt Company (Limited) the sum of $10,880.90, and the plaintiff received from the latter company a pass-book in his name in account with said American Dairy Salt Company, containing the following credit: February 11, 1882, cash, $10,880.90, and withdrew from such account, April 30, 1885, $4,300; June 1, 1888, $1,000, and July 11, 1888, $1,000.

*Held,* that as there was no express, explicit agreement obligating the plaintiff to allow his money to remain on deposit with the American Dairy Salt Company, that the amount of money mentioned in the account became due from the corporation the moment it was deposited, and the defendant, as one of its directors, became liable to pay the same at that time, and that consequently the three years prescribed by the statute as the limitation of time applicable to the enforcement of such statutory penalty having elapsed, that the plaintiff's right to recover against the director was barred.

That subsequent defaults in filing the annual report after the liability was complete did not aid the plaintiff.

That as the American Dairy Salt Company (Limited) was, by the thirteenth section of chapter 611 of 1875, expressly authorized to borrow money, and as it was not authorized to carry on a banking business, it was to be presumed that the corporation in receiving this money kept within its authorized powers and did not transgress the law by assuming to exercise banking powers, and that the transaction was, therefore, to be considered a loan rather than a deposit.

That even if it should be assumed that a deposit had been made, and not a loan, such deposit being in violation of the law, the corporation became indebted for money had and received, and liable to an action therefor at the time that the deposit was made.

APPEAL by the defendant George F. Comstock from a judgment, in favor of the plaintiff, for $9,062.67, entered in the office of the clerk of the county of Onondaga on the 21st day of January, 1890; and also from an order, entered in said clerk's office on the 21st day of January, 1890, refusing a new trial and denying the defendant's motion therefor made on the minutes of the court on a trial at the Onondaga circuit.

The action was brought by the plaintiff, as a creditor of the American Dairy Salt Company (Limited), to recover his debt from the defendant, a director of the said company.

Prior to February 11, 1882, the plaintiff held a promissory note made by the Onondaga Coarse Salt Association, of which Thomas Molloy was treasurer. The American Dairy Salt Company (Limited) was organized in 1877, under chapter 611 of the Laws of 1875, and continued the business of manufacturing and selling salt until a receiver thereof was appointed in October, 1888. Molloy

was also treasurer of the American Dairy Salt Company (Limited). While the Onondaga Coarse Salt Association was winding up its business it desired to pay and discharge its obligation to the plaintiff upon the note held by him, and did so by paying and delivering to the American Dairy Salt Company (Limited), on February 11, 1882, in cash $10,880.90. The plaintiff received from the latter company a pass-book in which was entered, viz., "Dr. Frank B. Chapman in special account with the American Dairy Salt Company (Limited), Cr. February 11, 1882, cash, $10,880.90." He received on account of such cash subsequently from the last named company the following sums, viz., "April 30, 1885, cash $4,300; June 1, 1888, $1,000; July 11, 1888, $1,000." No further sums were paid to the plaintiff. Plaintiff in his complaint alleges:

" 3. That the defendant, George F. Comstock, was a duly qualified, elected and acting director of the said the American Dairy Salt Company (Limited), during each of the years 1881, 1882, 1883, 1884, 1885, 1886, 1887 and 1888, and during all the times the defaults in making and filing the annual reports and certificates and appended reports, required by law, were made, occurred and continued as hereinafter stated.

" 4. That the said, the American Dairy Salt Company (Limited), did not, within twenty days after the 1st day of January, in either of the years 1881, 1882, 1883, 1884, 1885, 1886, 1887 or 1888, or at any time in said years 1881 to 1888, inclusive, make a report in writing, as of January first, signed by the president and a majority of the directors of the said corporation, and verified by its president and secretary, stating the amount of its capital, the proportion thereof actually paid in, the amount, and, in general terms, the nature of its existing assets and debts, the names of its then stockholders, and the dividends, if any, declared since the last report of said corporation, and file the same in the office of the secretary of State, as required by law ; that the said corporation did not make or file, in either of the years 1881, 1882, 1883, 1884, 1885, 1886, 1887 or 1888, or at any time thereafter, the annual report required and provided for by section 18, chapter 611, Laws of 1875, or by said section as amended."

In the defendant's answer he does not deny the allegations just quoted from the plaintiff's complaint; they are, therefore,

to be deemed, as they were deemed, true upon the trial. The answer of the defendant alleges that "said corporation was not organized for or authorized to do the business of banking, or to receive deposits of money, but, on the contrary, was forbidden by law from so doing or receiving the same, and the said alleged deposit was void as a deposit." And, as a further defense, he alleges "that the plaintiff ought not to have or maintain this action, because the same was not commenced within three years next after the accruing of said cause of action." The principal question of fact submitted to the jury upon which a verdict was made to turn by the learned trial judge, was whether or no the American Dairy Salt Company, when it acquired the money from the Onondaga Coarse Salt Association, so paid and delivered upon the assent of the plaintiff, received and held the same as "a loan or a deposit." Exceptions were taken to several rulings had upon the trial and to the charge as delivered, and to several refusals to charge as requested.

*Andrew H. Green*, for the appellant.

*Knapp, Nottingham & Andrews*, for the respondent.

HARDIN, P. J. :

Under chapter 611 of the Laws of 1875, the American Dairy Salt Company (Limited) was organized. In the eighteenth section it is provided that "every such corporation shall annually, within twenty days after the first day of January, make a report, which shall state the amount of capital, and the proportion actually paid in, the amount, and, in general terms, the nature of its existing assets and debts, and the names of its then stockholders, and the dividends, if any, declared since the last report. * * * And if any such corporation shall fail so to do, all the directors thereof shall be jointly and severally liable for all the debts of the corporation then existing, and for all that shall be contracted before such report shall be made." There was a failure to make a report according to the provisions of the section in January, 1882. The defendant was then a trustee of the corporation. The corporation became indebted to the plaintiff on the 11th of February, 1882. As soon as the corporation created the debt, the defendant, as one of its directors, became liable for the same.

In *Boughton* v. *Otis* (21 N. Y., 261), where a similar provision found in chapter 40 of the Laws of 1848, authorizing the formation of manufacturing corporations, was under examination, in the course of the opinion delivered in that case it was said : " The liability, when it has once attached, and upon whomsoever it has attached, remains fixed and unalterable." Plaintiff is seeking to enforce a liability that arises by reason of the provisions of the statute already quoted. As was said in *Merchants' Bank* v *Bliss* (35 N. Y., 416) : " The action depends wholly upon the statute. There never was any such remedy or cause of action, in whole or in part, at common law." In dealing with the liability of directors similarly situated in *Jones* v. *Barlow* (62 N. Y., 202), the court said : " They are only liable to an action for debts actually due, and for which a present right of action exists against the corporation." And it was further held in that case that " the short statute of limitations only begins to run from the time a cause of action accrues, not from the time of default in making the report." That decision was made while section 92 of the Code of Procedure was in force. The rule remains the same under section 383 of the Code of Civil Procedure. It becomes important, therefore, to inquire how and when the " debt " that the American Dairy Salt Company (Limited) contracted, by and with the plaintiff, became due and payable. In considering this question, it may be observed that no written instrument was delivered to the plaintiff evidencing an indebtedness in clear and exact terms. This case is, therefore, unlike *Smiley* v. *Fry* (100 N. Y., 262), which was an action upon an instrument in the following words : " Due S. K. Ashton, M. D., trustee, $4,000 returnable on demand. It is understood that this sum is specially deposited with us, and is distinct from the other transactions with said Ashton." In considering that instrument the court held that it was in the nature of a certificate of deposit, and, therefore, no cause of action arose thereon until a demand was made for the sum deposited. We fail to find in the words " special account," appearing in the pass-book which was delivered to the plaintiff, when read in the light of the oral testimony given upon the trial, any explicit agreement for forbearance. The circumstance that the word " cash " appears

opposite the amount of money for which the corporation became indebted is entitled to some consideration in determining the question of whether or not there was any agreement for time, but it has no controlling force. After a careful perusal of the evidence given upon the trial we are not able to say that it contains any express, explicit agreement obligating the plaintiff to allow his moneys to remain for any definite period of time. It is all consistent with the idea that if he did leave his money he would receive certain specified interest thereon ; if he did not leave it he could, at his own pleasure, obtain a recall of the same. Nor do we regard the circumstances that the plaintiff received on different occasions partial payments upon the sum of money for which the corporation was indebted to him, as indicative of any agreement that for any length of time his money should be in the possession of the corporation. We find nothing in the evidence which would necessarily defeat an action had such a one been brought the next day after the money was received by the corporation from the previous debtor. But it is argued by the learned counsel for the respondent that the debtor corporation received the moneys on deposit, and not as a loan. It may be observed that the testimony of Molloy bears quite as strongly in the direction of establishing a loan as it does in the direction of establishing a deposit. However, it is quite fair, in considering his evidence, to bear in mind that he said, while upon the stand, that he was not familar with the distinction between a loan and a deposit. In considering the question whether it was a loan or deposit, it should be borne in mind that the receiving of deposits is an incident of banking and of banking corporations. The American Dairy Salt Company (Limited), was not authorized to carry on a banking business, indeed, it fell within the general provisions of the statute which prohibited that kind of business to such corporations. (See sections 3 and 4 of the Revised Statutes [7th ed.], vol. 3, p. 2124 ; *N. Y. State Loan and Trust Co.* v. *Helmer*, 77 N. Y., 64 ; *Pratt* v. *Short*, 79 id., 445 ; and my opinion in *Pratt* v. *Short*, 53 How., 506 ; and the opinion of ANDREWS, J., in the same case sustaining the decision made at Special Term, 79 N. Y., 440 ; Id., 449.)

So it may be observed, in considering the question, that the American Dairy Salt Company (Limited) was, by the thirteenth section of chapter 611 of the Laws of 1875, expressly authorized to

borrow money. That section contains the following words : " It shall be lawful for all such corporations *to borrow money* for the legitimate purposes of such corporation." (Session Laws of 1875, p. 758.) It is more reasonable to suppose that the corporation kept within its authorized powers, than to believe that it transgressed the provisions of the prohibitive laws to which we have alluded. These views lead to the conclusion that the moment the corporation created the debt, the defendant, as one of its directors, became liable to pay the same ; he had incurred the statutory penalty, and he remained liable during the next three years ensuing; at the end of the three years the short statute of limitations became a bar to the plaintiff's right of recovery. (Code of Civil Procedure, § 383 ; *Duckworth* v. *Roach*, 81 N. Y., 49.)

Plaintiff is not advantaged by the fact that there were several other defaults following those of 1881 and 1882 in making the annual reports. The subsequent defaults, after the liability was completed, did not aid the plaintiff. This question is put at rest by *Losee* v. *Bullard* (79 N. Y., 406). In that case, RAPALLO, J., said : " The appellants claim that the failure to file the certificate in each year after 1868 created a new liability on the part of the defendant, and that, consequently, the default in 1873 and the subsequent years can be resorted to for the purpose of maintaining this action and avoiding the effect of the statute of limitations. We think this position untenable, for two reasons. In the first place the statute requires that the action be brought within three years from the time the cause of action accrued. The action was for a statutory penalty. This penalty, if it ever was incurred, was completely incurred in 1868, and the testator of the plaintiffs could then have brought his action therefor. We do not think that the continuance of the default in successive years had the effect of renewing the liability of the respondent as would a new promise or a payment on account in the case of a liability founded on contract."

In *The Rector, etc.*, v. *Vanderbilt* (98 N. Y., 175) a similar question arose, and Judge DANFORTH, speaking for the court, said : " Neither the continuance of the default nor subsequent omissions on the part of the company to make a report could, as to the debt in question, either renew the old liability or create a new right of action. The statute operates upon the remedy, and the omission

of the creditor to pursue it cannot stop its running. The liability of the trustee was imposed by statute, and the benefit and 'suit therefor are limited to the creditor as the one aggrieved. In such a case, when the statute of limitations begins to run, nothing subsequent will stop it. But the question now before us is directly within the principle of the decision of this court in *Losee* v. *Bullard* (*supra*), and permits no further discussion It can make no difference that the company in this case continued to transact business. The plaintiffs were not required to sue the trustee, but could not, by omitting to do so, prevent the application of the statute."

If it be assumed that the transaction amounted to a deposit on the part of the plaintiff with the American Dairy Salt Company (Limited), and that such deposit was a violation of the restraining acts, and that the corporation became indebted for money had and received, and liable to an action therefor in accordance with the doctrine of *Pratt* v. *Short* (*supra*), it may be observed that the corporation, under such circumstances, had no valid agreement for time entitling it to set up a defense. It may be further observed that the defendant, if he became, by reason of the transaction, liable under the statute as for a debt of the corporation, or for the money had and received by the corporation, that liability occurred more than three years preceding the commencement of this action, and was, therefore, barred. The foregoing views lead to the conclusion : (1.) That the verdict ought to have been directed in favor of the defendant, or a nonsuit granted. (2.) That the verdict is against the evidence. (3.) That the several exceptions taken to the refusals to charge, present error.

The judgment and order should be reversed upon the exceptions and a new trial ordered, with costs to abide the event.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed upon the exceptions and a new trial ordered, with costs to abide the event.